1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ANTHONY WILLIAM TREVINO,        )   Civil No. 94cv1913 IEG(RBB)
                                     )
12                 Petitioner,       )   **REPORT AND RECOMMENDATION RE:**
                                     )   **DENYING FIRST AMENDED PETITION**
13   v.                              )   **FOR WRIT OF HABEAS CORPUS**
                                     )   **[DOC. NO. 11]**
14   MICHAEL EVANS, Warden,          )
                                     )
15                 Respondent.       )
     _____)

16

17        Anthony William Trevino filed his Petition for a Writ of

18   Habeas Corpus on December 21, 1994 [doc. no. 1].  The Petition was

19   dismissed on September 8, 1995 [doc. no. 6, 7].  In an unpublished

20   decision filed on November 15, 2005, the Ninth Circuit reversed the

21   district court and ordered that the First Amended Petition be

22   considered on its merits [doc. no. 41].

23        Trevino, a state prisoner represented by counsel, submitted a

24   First Amended Petition for Writ of Habeas Corpus [doc. no. 11]

25   which was filed <u>nunc</u> <u>pro</u> <u>tunc</u> to January 29, 2004.  Petitioner

26   asserts three claims for relief:  (1) The trial court's denial of

27   Trevino's motion for a continuance prevented him from receiving

28   effective assistance of counsel; (2) his attorney's failure to seek

severance of Petitioner's trial from his codefendants denied him
effective assistance of counsel; and (3) he received ineffective
assistance when his attorney objected to giving accomplice jury
instructions.  (Am. Pet. 4-12.)

## I.   FACTUAL BACKGROUND

On December 2, 1991, Robert Connelly was driving south on
Interstate 5 in San Diego with Joseph Kinsey and Petitioner as
passengers. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2598-600, May
19, 1992; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2780, May 20,
1992.)  A red Chevrolet Blazer, driven by James Whitney, suddenly
cut in front of Connelly's car, causing Connelly to swerve and pull
off the road. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2500-01,
2600-01.)  Connelly, Trevino, and Kinsey followed the Blazer when
it exited the freeway. (Id. at 2503, 2603.)  They lost sight of
the vehicle at one point, but they caught up and followed it to the
entrance of Greenfield Mobile Home Park, where Whitney lived. (Id.
at 2501, 2603-04.)  Kinsey testified that they followed Whitney's
Blazer "to mess with him, I guess, beat him up, or something."
(Id. at 2602-05; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2780-81.)

The group waited outside the trailer park for a few minutes,
then drove inside. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2604.)
They found the Blazer parked with no one nearby, so they left.
(Id. at 2604-05.)  They drove to San Ysidro, which was
approximately five minutes away, to see their friend Carlos
Gutierrez at work. (Id. at 2605, 2612; Lodgment No. 2(h), Rep.'s
Tr. vol. 10, 2781.)

When they arrived, Gutierrez was in the parking lot talking to
Carlos Mallard, a security guard. (Lodgment No. 2(g), Rep.'s Tr.

vol. 9, 2523-26, 2612.)  Trevino and Connelly got out of the car to speak with Gutierrez.  (Id. at 2612-13.)  Kinsey did not join the conversation and did not hear what was said.  (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2613-14; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2782.)  While in the parking lot, Petitioner asked Gutierrez "what was up with the nine."  (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2529.)  Mallard walked away because he thought the men were talking about a nine-millimeter handgun and did not want to be involved. (Id. at 2529-30.)  He knew that Gutierrez owned a nine-millimeter handgun.  (Id. at 2530-31.)  Kinsey, who never joined the other men in the parking lot, saw Trevino holding a gun.  (Id. at 2614-15.) After ten to fifteen minutes, Kinsey and Connelly left the parking lot in Connelly's car, and Trevino left as a passenger in Gutierrez's car.  (Id. at 2616; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2784.)

    The two cars drove to Greenfield Mobile Home Park and stopped just outside the entrance gate.  (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2617.)  All four men got in Gutierrez's car and drove into the mobile home park together.  (Id.)  Once they located the red Chevrolet Blazer, the group left the mobile home park to switch cars, because Gutierrez "didn't want no trouble in his car."  (Id. at 2618.)  The four men got in Connelly's car; Connelly was driving; Trevino was in the front passenger seat; and Gutierrez and Kinsey were in the back seats.  (Id. at 2619.)  While they drove back into the mobile home park, Trevino stated that he would shoot the Blazer if no one was around.  (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2829, 2836.)

As they approached the red Blazer, Connelly turned the car's headlights off. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2619-20.) Trevino took out the handgun and cocked it, but the others told him not to shoot. (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2789-91, 2832, 2835.) Trevino then shot at the Blazer several times. (<u>Id.</u> at 2791; Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2620.) They accelerated past the Blazer and turned left down the street. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2622; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2791.)

Four or five seconds later, Trevino fired two more shots as they drove past another truck. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2623, 2627; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2792.) Alfredo Rodriquez, who was standing beside the driver's door of the truck, was shot and killed. (<u>See</u> Lodgment No. 2(f), Rep.'s Tr. vol. 8, 2287-92, May 18, 1992; Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2542-43.)

After driving out of the mobile home park, Connelly, Kinsey, Gutierrez, and Petitioner all went to Connelly's apartment. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2628-29.) Kinsey testified that while there, someone asked Trevino why he shot at the person by the truck, and he stated he thought the person might have "seen his face or the license plate." (<u>Id.</u> at 2630; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816-18.) Angela Knecht, who was present in the apartment, overheard Trevino say "his hand was shaking when the gun went off." (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3398, May 22, 1992.)

On December 16, 1991, the police found a nine-millimeter handgun and ammunition in Trevino's bedroom. (Lodgment No. 2(f),

4

Rep.'s Tr. vol. 8, 2316–17.)  Casings from the crime scene matched casings fired from the gun.  (Lodgment No. 2(i), Rep.'s Tr. vol. 11, 3060, 3062, 3065–66, May 21, 1992.)

On January 1, 1992, Kinsey was interviewed by Detective Swiskowski about the conversations at Connelly's apartment. (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816–17.)  He told the detective that he thought Trevino might have shot the guy.  (Id. at 2817.)  Kinsey described the conversation:  "They were mostly talking.  Oh, I wonder if they got the license plate or this and that, you know.  Nobody, you know, no one said nothing about the guy [the victim of the shooting]."  (Id. at 2818.)  Yet, on March 17, 1992, Kinsey told the deputy district attorney and his investigator that inside the Connelly apartment Trevino said "something to the effect of he thought the man [the victim] had seen them, their car and possibly even their license[.]"  (Id. at 2816.)

## II.  PROCEDURAL BACKGROUND

On February 21, 1992, the San Diego County District Attorney filed an information charging Trevino, Connelly, Gutierrez, and Kinsey with murder, see Cal. Penal Code § 187(a) (West 1999), conspiracy to shoot at an unoccupied vehicle, see Cal. Penal Code § 182(a)(1) (West Supp. 2007), and shooting at an unoccupied vehicle, see Cal. Penal Code § 247(b) (West 1999).  It was further alleged that Petitioner used a firearm, and he inflicted great bodily injury in a drive-by shooting, see Cal. Penal Code §§ 12022.5, 12022.55, 12022.7 (West Supp. 2007).  (Lodgment No. 1, Clerk's Tr. vol. 1, 1–4, Feb. 21, 1992.)

On March 3, 1992, Trevino's attorney filed a motion to sever Petitioner's trial from that of his codefendants. (<u>Id.</u> at 33-34, Mar. 3, 1992.)  A motion to sever was also filed by counsel for codefendant Gutierrez. (<u>Id.</u> at 93-94, Apr. 27, 1992.)  Both motions were denied, and the case proceeded jointly against all four defendants. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1299, May 11, 1992.)

Trevino was originally represented by attorney Hank Howlett, but Howlett was relieved and attorney Brent Barnes substituted in as counsel on April 10, 1992. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 361, Apr. 10, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 343, July 20, 1992; Lodgment No. 3, Rep.'s Tr. vol. 1, 7, Apr. 10, 1992.)  Barnes filed a motion to continue the trial date to allow time for him to prepare, but the motion was denied on April 27, 1992, the date set for trial to begin. (Lodgment No. 1, Clerk's Tr. vol. 1, 13, Apr. 22, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 363, Apr. 27, 1992; Lodgment No. 3(b), Rep.'s Tr. vol. 3, 2, Apr. 27, 1992.)  The case was assigned to a trial department and trailed for a week to May 4, 1992. (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 3.)  Counsel filed a second motion to continue the trial, which was granted; trial was trailed to May 11, 1992, two weeks after the original trial date of April 27. (Lodgment No. 1, Clerk's Tr. vol. 1, 27-28, May 1, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 367, May 4, 1992.)  On May 11, Barnes renewed his request for a further continuance, but the request was denied. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1250-51, 1255.)

Kinsey pled guilty to one count of shooting at an unoccupied vehicle, and trial proceeded against Trevino, Connelly, and

6

Gutierrez.  (<u>See</u> Lodgment No. 2(b), Rep.'s Tr. vol. 3, 1009, May 5, 1992; Lodgment No. 11, <u>People v. Trevino</u>, No. D017215, slip op. at 14 (Cal. Ct. App. Nov. 15, 1993).)  The jury convicted Petitioner of all charges and found each of the special allegations were true. (Lodgment No. 1, Clerk's Tr. vol. 1, 170-74, 185, June 4, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 352-54, July 21, 1992.)

On July 7, 1992, Trevino's attorney filed a motion for a new trial or for modification of the verdict.  (Lodgment No. 1(a), Clerk's Tr. vol. 2, 309, July 7, 1992.)  Petitioner claimed there was "newly-discovered" evidence gained through an investigation of the crime scene that would support the defense's theory that the victim was not shot at "point-blank" range.  (<u>Id.</u> at 312.)  Trevino filed a supplemental memorandum in support of his motion for new trial arguing that the facts showed the killing was not premeditated, so Trevino's conviction on count one should be reduced from first-degree murder to a lesser offense.  (<u>Id.</u> at 337.)  The motion was denied.  (<u>Id.</u> at 423, July 21, 1992; Lodgment No. 2(p), Rep.'s Tr. vol. 18, 28, July 21, 1992.)  Petitioner was sentenced to an aggregate term of thirty years to life.  (Lodgment No. 1(a), Clerk's Tr. vol. 2, 352-54; Lodgment No. 2(p), Rep.'s Tr. vol. 18, 45.)

Trevino filed a notice of appeal on July 28, 1992.  (Lodgment No. 1(a), Clerk's Tr. vol. 2, 355, July 28, 1992.)  Petitioner argued on appeal that he was deprived of effective assistance of trial counsel by (1) the court's denial of his motion for a reasonable continuance, (2) his attorney's objection to jury instructions regarding accomplice testimony, and (3) his attorney's failure to move to sever the trial based on conflicting defenses.

(See Lodgment No. 4, Appellant's Opening Brief at 9, 15, 31, People v. Trevino, No. D017215 (Cal. Ct. App. Nov. 15, 1993).)  Trevino also filed a petition for writ of habeas corpus, which the court of appeal considered simultaneously with his appeal. (Lodgment No. 5, Pet. at 1, In re Trevino, No. D018750 (Cal. Ct. App. Nov. 15, 1993); Lodgment No. 6, In re Trevino, No. D018750, order at 1 (Cal. Ct. App. Apr. 22, 1993).)

The California Court of Appeal affirmed the trial court's judgment and denied Trevino's petition for writ of habeas corpus. (Lodgment No. 11, Trevino, No. D017215, slip op. at 20.) Petitioner filed a petition for rehearing, which was denied. (Lodgment No. 12, Pet. for Reh'g at 1, People v. Trevino, No. D017215 (Cal. Ct. App. Dec. 10, 1993); Lodgment No. 13, People v. Trevino, No. D017215, slip op. at 1 (Cal. Ct. App. Dec. 10, 1993).) Trevino then filed a petition for review in the California Supreme Court; the petition was denied on February 23, 1994.  (Lodgment No. 14, Pet. for Review at 1, People v. Trevino, No. S036813 (Cal. Feb. 23, 1994); Lodgment No. 16, People v. Trevino, No. S036813, slip op. at 1 (Cal. Feb. 23, 1994).)  The California Supreme Court also denied a petition for writ of habeas corpus filed by Petitioner at the same time as his petition for review. (Lodgment No. 15, Pet. at 1, In re Trevino, No. S036814 (Cal. Feb. 23, 1994); Lodgment No. 17, In re Trevino, No. S036814, docket at 1 (Cal. Feb. 23, 1994).)

On December 21, 1994, Petitioner turned to federal court and filed a Petition for Writ of Habeas Corpus [doc. no. 1]. Magistrate Judge Roger C. McKee issued a Report and Recommendation Re: Denial for Failure to Exhaust State Remedies [doc. no. 5], and District Judge Irma E. Gonzalez adopted the Report and

Recommendation and dismissed the Petition [doc. nos. 6, 7] on September 8, 1995.  Over seven months later, on April 18, 1996, Petitioner moved to withdraw the unexhausted claim from the Petition and for reconsideration [doc. no. 8].  The district court did not rule on Trevino's motion because his Petition had been dismissed, stating, "[d]ocuments filed by petitioner since the closing date will be disregarded and no orders will issue in response to future filings."  (Order 1, May 15, 1996.)

Trevino's First Amended Petition [doc. no. 11], submitted over seven years later, was filed <u>nunc pro tunc</u> to January 29, 2004. The district court construed the Petition as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) [doc. no. 12], and it denied the motion on May 21, 2004, finding Trevino had not presented "extraordinary circumstances" that warranted relief from judgment.  (Order Den. Pet'r's Mot. Relief From J. 7.)  Petitioner then filed a Motion for Reconsideration [doc. no. 23].

While the Motion for Reconsideration was pending, Trevino filed a Notice of Appeal of Judge Gonzalez's Order denying relief from judgment [doc. no. 28].  The district court issued a Certificate of Appealability [doc. no. 30] on July 2, 2004.  Judge Gonzalez then denied Petitioner's Motion for Reconsideration because the district court lacked jurisdiction in light of Trevino's appeal to the Ninth Circuit.  (Order Den. Pet'r's Mot. Reconsideration 2.)

The Ninth Circuit Court of Appeals reversed the district court's denial of Trevino's Motion for Reconsideration and remanded the case with instructions to consider the First Amended Petition

1   on the merits [doc. no. 41].  (<u>Trevino v. Prunty</u>, No. 04-56287,

2   slip op. at 2-3 (9th Cir. Nov. 15, 2005).)  On August 18, 2006,

3   Respondent Michael Evans[1] filed an Answer [doc. no. 49], and he

4   filed a Notice of Lodgment [doc. no. 50] on August 21, 2006.

5   Petitioner then filed a Traverse [doc. no. 51] on October 10, 2006.

6   In a letter brief filed on February 22, 2007, Trevino's attorney

7   informed the Court of a recent Ninth Circuit decision, <u>Lankford v.</u>

8   <u>Arave</u>, 468 F.3d 578 (9th Cir. 2006), and asserts that the case is

9   relevant new authority [doc. no. 52].

### III.   STANDARD OF REVIEW

11       Counsel for Petitioner contends that Trevino is entitled to

12  habeas relief under the provisions of the Antiterrorism and

13  Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. § 2244 (West

14  2006).  (Traverse 3-23.)  Respondent, on the other hand, argues

15  that the presumption of correctness under the pre-AEDPA version of

16  § 2254(d) applies "to the state court's factual findings."  (Answer

17  2.)  He does not contend that AEDPA is applicable.

18       The amended statute, with its more deferential review

19  requirements, does not apply to federal habeas petitions pending on

20  April 24, 1996.  <u>Woodford v. Garceau</u>, 538 U.S. 202, 204 (2003)

21  (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997)).  Because

22  Trevino's Petition was filed on December 21, 1994, AEDPA does not

23  govern this case.  <u>See Woodford</u>, 538 U.S. at 204; <u>Phillips v.</u>

24  <u>Woodford</u>, 267 F.3d 966, 973 (9th Cir. 2001).  <u>But see Sanchez v.</u>

25  <u>Gilmore</u>, 189 F.3d 619, 622-23 (7th Cir. 1999) (applying AEDPA to a

27       [1] The Court <u>sua sponte</u> substitutes Michael Evans, Warden of
28  Salinas Valley State Prison, for K.W. Prunty, former Warden.  <u>See</u>
    Fed. R. Civ. P. 25(d)(1); <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 894
    (9th Cir. 1996).

1   second petition filed after 1996 when an earlier, pre-AEDPA

2   petition was dismissed for failure to exhaust).

3       In Phillips, the petitioner filed his original petition before

4   AEDPA was enacted on April 24, 1996.  "Following the district

5   court's dismissal of that petition, we reversed and remanded, and

6   Phillips filed the instant amended petition on July 15, 1996.  In

7   these circumstances, we treat Phillips's amended petition -- filed

8   after AEDPA's effective date  -- as part of his earlier,

9   erroneously dismissed petition, and apply pre-AEDPA law."

10   Phillips, 267 F.3d at 973.  Because the procedural history of

11   Petitioner's case mirrors that in Phillips, pre-AEDPA law applies

12   to Trevino's claims.

13       In 1996, Congress "worked substantial changes to the law of

14   habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

15   1997).  Before and since the passage of AEDPA, some requirements

16   have remained constant.  To present a cognizable federal habeas

17   corpus claim, a state prisoner must allege that his conviction was

18   obtained "in violation of the Constitution or laws or treaties of

19   the United States."  See 28 U.S.C.A § 2254(a) (West 2006).

20   Petitioner must allege that the state court violated his federal

21   constitutional rights.  See Reed v. Farley, 512 U.S. 339, 347

22   (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991);

23   Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).

24       A federal district court does "not sit as a 'super' state

25   supreme court" with general supervisory authority over the proper

26   application of state law.  Smith v. McCotter, 786 F.2d 697, 700

27   (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

28   (1990) (holding that federal habeas courts must respect a state

court's application of state law); <u>Jackson</u>, 921 F.2d at 885

(concluding that federal courts have no authority to review a

state's application of its law).  Federal courts may grant habeas

relief only to correct errors of federal constitutional magnitude.

<u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989)

(stating that federal courts are not concerned with errors of state

law unless they rise to the level of a constitutional violation).

     "Under pre-AEDPA law, the state court's findings of fact are

'entitled to a presumption of correctness unless they are 'not

fairly supported by the record.'"  <u>Clark v. Brown</u>, 450 F.3d 898,

904 (9th Cir.), <u>cert. denied</u>, ___ U.S. ___, 127 S. Ct. 555 (2006)

(quoting <u>Silva v. Woodford</u>, 279 F.3d 825, 835 (9th Cir. 2002)).

Questions of law are reviewed de novo.  <u>Clark</u>, <u>id.</u>  Mixed questions

of law and fact are also subject to de novo review.  <u>Correll v.</u>

<u>Ryan</u>, 465 F.3d 1006, 1009 (9th Cir. 2006) (reviewing ineffective

assistance of counsel claim); <u>Clark</u>, 450 F.3d at 904 (stating that

harmless error is reviewed de novo).

### IV.   DISCUSSION

     Petitioner claims he was denied effective assistance of

counsel because:  (1) The trial court denied his counsel's requests

for a continuance, leaving his attorney with inadequate time to

prepare for trial; (2) his attorney failed to seek a severance of

his trial from that of his codefendants due to inconsistent

defenses; and (3) his attorney objected to giving a jury

instruction regarding accomplice testimony.  (<u>See</u> Am. Pet. 4-12;

Traverse 3-23.)

     In deciding a habeas petition, this Court reviews the "last

reasoned" state court decision.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797,

1   803 (1991); <u>Medina v. Hornung</u>, 386 F.3d 872, 877 (9th Cir. 2004).

2   The California Supreme Court summarily denied Trevino's petition

3   for review. (Lodgment No. 16, <u>Trevino</u>, No. S036813, slip op. at

4   1.) Therefore, this Court "looks through" that dismissal to the

5   California Court of Appeal's decision on Petitioner's direct

6   appeal. <u>Medina</u>, 386 F.3d at 877.

7   **A.    The Trial Court's Denial of Counsel's Motions for Continuance**

8   **Did Not Deny Trevino Effective Assistance of Counsel.**

9       Petitioner's first habeas claim for relief is that he did not

10  receive effective assistance of counsel because the trial court

11  denied his newly-retained counsel's motions for a continuance to

12  prepare for trial. (<u>See</u> Am. Pet. 1-8; Traverse 3-9.) Trevino

13  alleges he was deprived of his "right to competent counsel" in

14  violation of the Sixth and Fourteenth Amendments and the Supreme

15  Court's holding in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

16  (Traverse 3.)

17      The California Court of Appeal did not analyze this claim

18  under <u>Strickland</u>; the case law cited and arguments made to the

19  court indicated that Trevino was asserting a due process claim.

20  (<u>Compare</u> Lodgment No. 11, <u>Trevino</u>, No. D017215, slip op. at 5-6,

21  <u>with</u> Lodgment No. 4, Appellant's Opening Brief at 9-14, <u>People v.</u>

22  <u>Trevino</u>, No. D017215.) The court examined whether the lower court

23  abused its discretion in denying Trevino's motions for a

24  continuance: "A review of the procedural record convinces us the

25  trial court did not abuse its discretion in denying Trevino's

26  counsel's requests for continuances and hence Trevino was not

27  denied due process of law." (Lodgment No. 11, <u>Trevino</u>, No.

28  D017215, slip op. at 7.) The appellate court did not address the

1  ineffective assistance of counsel aspect of this ground for relief.

2  (See id. at 6 n.4.)

3      Here, Trevino is raising more than a due process violation; he

4  appears to be arguing a combined due process and ineffective

5  assistance of counsel claim.  (See Am. Pet. 4-8; Traverse 3-9.)

6  Analogous facts and claims have been asserted in a variety of ways.

7  For example, in Castillo v. Matesanz, 348 F.3d 1, 4 (1st Cir.

8  2003), Castillo asserted that "the state court's rejection of his

9  two new trial claims -- a due process violation in denying [a]

10  continuance and ineffective assistance of counsel -- warranted

11  habeas relief."  Castillo argued that controlling case law was

12  Ungar v. Sarafite, 376 U.S. 575 (1964), the same case cited by

13  Trevino.  Id. at 9.  Ungar requires the reviewing court to examine

14  the circumstances presented at the time of the request for a

15  continuance.  Id.  It must determine whether a denial of a

16  continuance was "so arbitrary as to violate due process."  Id.

17  (quoting Ungar, 376 U.S. at 589.)  After deciding that a due

18  process violation had not occurred, the court reviewed Castillo's

19  separate claim that he received ineffective assistance of counsel

20  in violation of Strickland.  Id.  at 10-16.

21      In United States v. Stewart, 256 F.3d 231, 244 (4th Cir.

22  2001), one of the appellants made an argument similar to Trevino's:

23  "[Appellant] Livingston next contends that the district court

24  violated his Sixth Amendment right to effective assistance of

25  counsel by denying Livingston's motion for a continuance because

26  the denial forced his counsel to proceed to trial without adequate

27  preparation time."  The Fourth Circuit required Livingston to prove

28  "first that the district court abused its discretion in denying the

14

1  continuance motion and second that the denial 'specifically

2  prejudiced' his case."  Id.

3      Whether viewed as a due process claim or the first half of a

4  combined due process and ineffective assistance of counsel claim,

5  Trevino must show, at a minimum, that the trial court abused its

6  discretion in denying a continuance.  See Morris v. Slappy, 461

7  U.S. 1, 11-12 (1983); Williams v. Stewart, 441 F.3d 1030, 1056 (9th

8  Cir.), cert. denied, ___ U.S. ___ 127 S. Ct. 510 (2006).

9      **1.   Continuance of the Trial**

10      Although an attorney must be able to conduct a reasonable

11  investigation into his client's case, "[n]ot every restriction on

12  counsel's time or opportunity to investigate or consult with his

13  client or otherwise to prepare for trial violates a defendant's

14  Sixth Amendment right to counsel."  Morris v. Slappy, 461 U.S. at

15  11 (citing Chambers v. Maroney, 399 U.S. 42, 53-54 (1970)).

16  Defendants do not have an absolute right to a continuance to allow

17  counsel more time to prepare.  United States v. Poston, 902 F.2d

18  90, 96 (D.C. Cir. 1990).  "The denial of a continuance contravenes

19  a defendant's Sixth Amendment right to counsel only when there has

20  been 'an unreasoning and arbitrary insistence upon expeditiousness

21  in the face of a justifiable request for delay.'"  United States v.

22  Hedgepeth, 418 F.3d 411, 423 (4th Cir. 2005) (quoting Morris, 461

23  U.S. at 11-12).

24      Trevino complains that the trial court failed to delay the

25  trial date to give his attorney adequate time to prepare.  (Am.

26  Pet. 4-8; Traverse 3-9.)  In support of this claim, Petitioner

27  refers to requests made for a continuance on April 10, 27, 30, May

28  4 and 11.  (Am. Pet. 7; Traverse 4-6.)  Trevino argues that the

evidence produced in support of his motion for a new trial and state habeas petition establishes that the state trial and appellate courts' findings of fact are not entitled to a presumption of correctness.  (Traverse 7-8.)  This post-trial evidence, however, does not compel habeas relief.

A reviewing court decides whether a denial of a continuance is arbitrary and violates due process based upon "the reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589 (emphasis added).  Consequently, evidence presented in a post-trial motion or state habeas petition is not relevant to Petitioner's claim.

The Court may consider "whether previous continuances have been granted; whether the parties, the court, or counsel would be inconvenienced; whether there are legitimate reasons for the delay; whether the denial would prejudice the defendant; and whether the delay is the defendant's fault." Williams, 441 F.3d at 1056.  The California Court of Appeal examined "all relevant circumstances and specifically the reasons presented to the trial court at the time the request [for a continuance] was denied." (Lodgment No. 11, People v. Trevino, No. D017215, slip op. at 6-7.)  Trevino made multiple requests to continue his trial. (Lodgment No. 11, People v. Trevino, D017215, slip op. at 5-9.)  On April 10, 1992, Petitioner's new counsel requested a thirty-day continuance. (Id. at 7.)  The reasons are part of the record. (Lodgment No. 3, Rep.'s Tr. vol. 1, 3-7.)  New counsel stated that he had been looking at the case for about three weeks and was "somewhat familiar" with it and some of the issues. (Id. at 3.)  He also reviewed the videotapes of the interrogations from 6:00 p.m. to

16

1  3:00 a.m. one night.  (Id. at 6.)  "[T]he trial court advised

2  Barnes he would let him in the case if he was ready to proceed on

3  April 27.  The offer was accepted and the court confirmed the April

4  27 date." (Lodgment No. 11, People v. Trevino, D017215, slip op.

5  at 7.)  The trial, however, did not begin until May 11, which was

6  thirty days from the date of the original request for a

7  continuance.  (Id.)

8       The next motion to continue the trial was argued on April 27,

9  the day set for trial.  (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 1-3;

10  Lodgment No. 1, Clerk's Tr. 13.)  The motion, filed on April 22,

11  1992, stated that "defense experts and investigators will not have

12  completed their tasks, that discovery materials (specifically,

13  photo negatives) either have not been received or were received too

14  late for trial and witness preparation . . . ." (Lodgment No. 1,

15  Clerk's Tr. 13.)  In addition, on April 27, counsel announced that

16  he was "not ready" and argued for more time.  (Lodgment No. 3(b),

17  Rep.'s Tr. vol. 3, 1.)

18       The rationale for the continuance is the continuing
        availability of some discovery; and that is some
19       photographs that we've asked for, the -- plus a more
        recent order permitting investigations and a reenactment.
20       And I have investigators working on the matter.  I have
        an expert familiarizing himself with the matter and
21       working on it.  And for all of these reasons, Mr. Trevino
        needs a continuance in order to get effective
22       representation in trial.

23  (Id.)  Barnes explained that he had "a recently appointed expert

24  who was appointed finally by order of this court."  (Id. at 2.)

25  The court disagreed:  "No, sir, that expert was involved before."

26  (Id.)  In an earlier declaration, counsel stated that on April 13,

27  1992, he "called the office of Criminalist Parker Bell, with whom

28  Mr. Howlett [prior counsel] had made some arrangements for a re-

17

enactment." (Lodgment No. 1, Clerk's Tr. vol. 1, 12.) Although the court nominally denied the April 27 motion, (Lodgement 3(b), Rep.'s Tr. vol. 3, 2), the judge assigned the matter to another trial department and stated, "That will give you approximately a week and a half to do whatever you have to do, counsel." (<u>Id.</u> at 3.)

Another request for a continuance was made on May 4, 2002. (Lodgment No. 3, Rep.'s Tr. vol. 1, 8.) Judge Murphy became available to try the case before the scheduled May 11 trial date; Trevino's counsel acknowledged that "we would have started trial on the 11th [but stated that he] would like more time." (<u>Id.</u> at 9.) Barnes explained, "[I]t is just that my time was very tightly allocated, and then I got side tracked on several other things, unfortunately, including that which was the Rodney King verdict in the Los Angeles case. That emotionally kind of messed me up." (<u>Id.</u>) The court then agreed that the case could be trailed to May 11th. (<u>Id.</u>)

On May 11, Trevino's counsel made his last motion to continue the trial. (Lodgment No. 2(c), Rep's Tr. vol. 4, 1250-52.) Barnes recounted the history of his previous requests and that he did not receive the anticipated help of volunteer attorneys. (<u>Id.</u>) He concluded: "I do not feel as comfortable as I would like to be in trying this case because I'm not prepared as well as I would like to be." (<u>Id.</u> at 1252.) The trial court denied the motion, and trial began the next day, May 12. (<u>Id.</u> at 1255, 1402.)

Trevino's claim requires that the Court examine each sequential request for a continuance and the basis for each request. The Court also examines Petitioner's collective requests

1  for a continuance and the additional preparation time that counsel
2  was given.

3  　　The superior court accommodated Trevino's request for
4  additional time, balanced the conflicting demands on the
5  prosecution and codefendants, and considered the stated reasons for
6  continuances.  In this context, the actual and ostensible denials
7  of Trevino's motions to continue the trial date were not abuses of
8  discretion, and the state court's determination of the facts are
9  fairly supported by the record in light of the evidence presented.
10 Clark, 450 F.3d at 904.

11 　　If Trevino's first ground for relief is a due process claim,
12 the road to habeas relief ends here.  Because he may be asserting a
13 combined due process and ineffective assistance of counsel claim,
14 the Court will turn to the ineffective assistance aspect of the
15 claim.

16 　　**2.   Reasonableness of Counsel's Performance**

17 　　In spite of Petitioner's other complaints about trial
18 counsel's actual ineffectiveness, the first ground for habeas
19 relief asserts that with more preparation time his attorney "would
20 have presented demonstrative evidence showing how dark the trailer
21 park was on the night of the shooting," and he would have
22 "investigators gather evidence of how dark the trailer park was on
23 a cloudless night . . . ."  (Traverse 6.)

24 　　Ineffective assistance of counsel can arise in two ways:  The
25 government may violate a defendant's right to effective assistance
26 by interfering with counsel's ability "to make independent
27 decisions about how to conduct the defense[,]" or an attorney may
28 simply fail to render adequate representation.  Strickland v.

1   Washington, 466 U.S. 668, 686 (1984) (citations omitted).  One
2   group of claims refers to government interference; the other refers
3   to actual ineffectiveness.   Id.  Although Trevino's second and
4   third claims for habeas relief allege "actual ineffectiveness" of
5   attorney Barnes, his first claim asserts that the trial court's
6   decisions to deny his counsel's requests for continuances
7   interfered with the attorney's ability to properly investigate and
8   present the defense.  (See Am. Pet. 4-8, 11; Traverse 6-7, 9-10,
9   16-18.)

10      The Sixth Amendment guarantees criminal defendants effective
11  assistance of counsel.  Dows v. Wood, 211 F.3d 480, 484 (9th Cir.
12  2000); see McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)
13  (stating "the right to counsel is the right to the effective
14  assistance of counsel").  In Strickland v. Washington, 466 U.S.
15  668, the Supreme Court set the federal standard for resolving
16  ineffective assistance of counsel claims.  These claims have two
17  prongs that must both be satisfied.  First, counsel's performance
18  must have been deficient in that "counsel's representation fell
19  below an objective standard of reasonableness."  Id. at 687-88.
20  Second, "the defendant must show that the deficient performance
21  prejudiced the defense"; in other words, "there is a reasonable
22  probability that, but for counsel's unprofessional errors, the
23  result of the proceeding would have been different.  A reasonable
24  probability is a probability sufficient to undermine confidence in
25  the outcome."  Id. at 687, 694.

26      The Court need not address both prongs if the petitioner
27  alleging ineffective assistance makes an insufficient showing on
28  one.  Id. at 697.  "If it is easier to dispose of an

20

1    ineffectiveness claim on the ground of lack of sufficient

2    prejudice, which we expect will often be so, that course should be

3    followed." Id.

4        "[B]oth the performance and prejudice components of the

5    ineffectiveness inquiry are mixed questions of law and fact."

6    Strickland, 466 U.S. at 698. The presumption of correctness

7    applies to "state court findings of fact made in the course of

8    resolving claims of ineffective assistance of counsel . . . ."

9    Lambert v. Blodgett, 393 F.3d 943, 977 (9th Cir. 2004). But the

10   state court's conclusion that counsel rendered effective assistance

11   or the application of federal law to state court factual findings

12   is reviewed de novo. Correll v. Ryan, 465 F.3d at 1009.

13       "A lawyer generally is presumed competent, and it is the

14   burden of the accused to overcome this presumption." Dows, 211

15   F.3d at 485 (citing United States v. Cronic, 466 U.S. 648, 658

16   (1984)); see also Strickland, 466 U.S. at 689. Courts will presume

17   that a defendant has suffered prejudice "when counsel was either

18   totally absent or prevented from assisting the accused during a

19   critical stage of the proceedings, or if counsel entirely failed to

20   subject the prosecution's case to meaningful adversarial testing."

21   Hays v. Alabama, 85 F.3d 1492, 1496-97 (11th Cir. 1996) (citing

22   Cronic, 466 U.S. at 662); see also Dows, 211 F.3d at 485.

23   Otherwise, "the defendant must point to specific errors made by

24   defense counsel that undermine confidence in the outcome of the

25   trial." United States v. LaRouche, 896 F.2d 815, 823 (6th Cir.

26   2003); see Strickland, 466 U.S. at 693-96; Cronic, 466 U.S. at 659

27   n.26 (citations omitted).

28

21

1    Attorney Barnes's motion for continuance, filed on April 22,
2    1992, claimed that he needed additional time to receive and review
3    discovery and for experts and investigators to complete their
4    tasks. (Lodgment No. 1, Clerk's Tr. vol. 1, 13.)  The case was
5    assigned to a trial department, but it was trailed to May 4, 1992.
6    (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 3.)  Trial was again trailed
7    to May 11, 1992. (Lodgment No. 3, Rep.'s Tr. vol. 1, 9.)

8    On May 11, Barnes made a request for a further continuance,
9    claiming he did not feel as prepared as he would like to be, even
10   though he had been devoting all his time to trial preparation.
11   Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1251-52.)  At that time he
12   indicated his investigator did not start work on the case until
13   April 23. (<u>Id.</u> at 1254.)  The judge denied the motion. (<u>Id.</u> at
14   1255.)

15   "Where counsel has no acquaintance with the facts of the case
16   and no opportunity to plan a defense, the result is that the
17   defendant is effectively denied his constitutional right to
18   assistance of counsel." <u>Chambers v. Maroney</u>, 399 U.S. at 59
19   (quoting <u>Avery</u>, 308 U.S. at 446).  That is not the case here.
20   Trevino went to trial one month after Barnes substituted in as
21   counsel; Barnes had already been looking at the case for three
22   weeks and was familiar with it and some of the issues. (<u>See</u>
23   Lodgment No. 3, Rep.'s Tr. vol. 1, 3, 6.)  When Barnes replaced
24   Howlett on April 10, 1992, the court warned him that trial was set
25   for April 27, and he must be ready to go to trial on that date.
26   (<u>Id.</u> at 6-7.)  Counsel agreed. (<u>Id.</u> at 7.)  Trial did not begin
27   until May 11, giving Barnes an additional two weeks beyond the
28   April 27 trial date to prepare.  Barnes devoted a significant

1   amount of time to preparing for trial:  "Once I took on this case,
2   I ceased all meaningful work on other matters at my office."
3   (Lodgment No. 5, Barnes Decl. at 3, Apr. 6, 1993.)  Barnes also had
4   the assistance of two volunteer attorneys who worked long hours to
5   help Barnes prepare.  (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 288,
6   Apr. 30, 1992.)

7        The superior court did not abuse its discretion in denying
8   Barnes's requests for further continuances.  Furthermore, its
9   rulings do not constitute an unconstitutional interference with
10  counsel's ability to make independent decisions about conducting
11  Trevino's defense.  In <u>United States v. Cronic</u>, 466 U.S. at 658-60,
12  the Court stated that there are "circumstances that are so likely
13  to prejudice the accused" that prejudice is presumed.  "But every
14  refusal to postpone a criminal trial will not give rise to such a
15  presumption."  <u>Id.</u> at 661.  "<u>Cronics</u> presumption of prejudice
16  applies to only a very narrow spectrum of cases where the
17  circumstances leading to counsel's ineffectiveness are so egregious
18  that the defendant was in effect denied any meaningful assistance
19  at all."  <u>Chadwick v. Green</u>, 740 F.2d 897, 901 (11th Cir. 1984).

20       The Court will not presume Petitioner was prejudiced simply
21  because his counsel had a limited amount of time to prepare for
22  trial.  <u>See</u>, <u>e.g.</u>, <u>Cronic</u>, 466 U.S. at 665 (twenty-five days to
23  prepare for trial was not presumptively prejudicial); <u>Conklin v.</u>
24  <u>Schofield</u>, 366 F.3d 1191, 1202 (11th Cir. 2004) (thirty-seven
25  days); <u>Glover v. Miro</u>, 262 F.3d 278 (4th Cir. 2001) (two days).

26       Even if the state court abused its discretion in denying the
27  continuance, this is not a case where it hampered defense counsel's
28  efforts to the extent that prejudice may be presumed.  <u>See United</u>

1   States v. Stewart, 256 F.3d at 244 (stating that to prove

2   ineffective assistance based on wrongful denial of a continuance,

3   the defendant must show the court abused its discretion and the

4   defendant suffered specific prejudice).

5      **3.   Prejudice**

6      Whether Trevino is complaining of government interference with

7   his right to counsel or the actual ineffectiveness of trial

8   counsel, Petitioner must be prejudiced to obtain habeas relief.

9   Strickland, 466 U.S. at 686.  Trevino must show a reasonable

10  probability that the outcome would have been different if the trial

11  court had granted a continuance.   Strickland, 466 U.S. at 695.

12  "When a defendant challenges a conviction, the question is whether

13  there is a reasonable probability that, absent the errors, the

14  factfinder would have had a reasonable doubt respecting guilt."

15  Id. at 695.

16     "To determine whether counsel's errors prejudiced the outcome

17  of the trial, we must compare the evidence that actually was

18  presented to the jury with that which could have been presented had

19  counsel acted appropriately."   Daniels v. Woodford, 428 F.3d 1181,

20  1201 (9th Cir. 2005) (citing Bonin v. Calderon, 59 F.3d 815, 834

21  (9th Cir. 1995)).

22     Trevino claims that with more time to prepare, his attorney

23  would have investigated and presented evidence of the lighting on

24  the night of the shooting.  (Am. Pet. 8.)  This evidence would have

25  been used "to impeach the argument that petitioner saw the victim

26  before shooting."  (Id.)  Trevino asserts that because it was dark

27  that night, "it would have been extremely difficult if not

28  impossible for petitioner to see the decedent before the decedent

1   was shot[,]" so the killing could not have been premeditated.

2   (Traverse 9.)

3       Barnes stated that both he and an investigator went to the

4   scene of the December 2, 1991, shooting to examine the lighting.

5   (Lodgment No. 5, Barnes Decl. at 4.)  But the investigation

6   occurred several months later, so Barnes could not obtain a reading

7   of the light levels that would accurately depict the lighting on

8   the night of the shooting.  (Lodgment No. 1(a), Clerk's Tr. vol. 2,

9   350.)  As counsel stated in his new trial motion, "If there had

10  been sufficient time, or if there had been a clear night, I would

11  have had light level evidence."  (Id.)  Nevertheless, Barnes was

12  able to communicate his theory of the defense to the jury,

13  including that it was dark, and Trevino may not have been able to

14  see what he was shooting.

15      Under cross-examination, Joseph Kinsey, who was in the vehicle

16  with Trevino, agreed that the trailer park was a "very dark place"

17  that night.  (Lodgment No. 2(h), vol. 10, 2820.)  Kinsey admitted

18  that they "were looking around in the dark trying to find the

19  Blazer . . . ."  (Id.)  In addition, private investigator Bill

20  Smith testified about the layout of the mobile home park where the

21  shooting occurred.  (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3402-

22  05.)  He described a lamppost near mobile home unit seventy-nine

23  and stated that it only illuminated approximately thirty-five to

24  thirty-nine feet.  (Id. at 3407-08.)

25      In his closing, Trevino's counsel argued that his client

26  couldn't see the victim.  "He [the victim] might have been shot

27  from out of the darkness.  I don't know."  (Lodgment No. 2(m),

28  Rep.'s Tr. vol. 15, 4038, May 28, 1992.)

> Those last two bullets could support, in reason, the
> second degree.  It could, depends on whether or not he
> sees the guy behind the truck.  If he doesn't see him, he
> can't be intending to shoot him; but if he saw him
> popping out it could support a second degree.
>
> But my other suggestion that this may have come out
> of the dark, and they may have been passing a dying man,
> that's involuntary manslaughter.

(<u>Id.</u> at 4048-49.)  There is no indication that with additional time

Barnes could have gathered more evidence that would have changed

the outcome.

"Some errors will have a pervasive effect on the inferences to

be drawn from the evidence, . . . and some will have an isolated,

trivial effect."  <u>Strickland</u>, 466 U.S. at 695-96.  "[I]n cases with

overwhelming evidence of guilt, it is especially difficult to show

prejudice from a claimed error on the part of trial counsel."

<u>Bonin</u>, 59 F.3d at 836 (quoting <u>United States v. Coleman</u>, 707 F.2d

374, 378 (9th Cir. 1983)).

The prosecutor had strong evidence of guilt.  Trevino's

attorney did not dispute that Petitioner was the shooter; the

question was whether his actions were premeditated murder or some

lesser offense.  (<u>See</u> Lodgment No. 2(m), Rep.'s Tr. vol. 15, 4001-

03.)  Kinsey testified that he saw the victim standing next to the

truck before Trevino shot him, which contradicts Barnes's theory

that it was too dark to see.  (Lodgment No. 2(g), Rep.'s Tr. vol.

9, 2624-25.)  Gutierrez's statement was that "he saw an unknown man

get shot."  (Lodgment No. 1(a), Clerk's Tr. vol. 2, 284, May 22,

1992.)  Connelly's statement, likewise, indicated that the victim

was visible, although it was dark.

> I drove my vehicle slowly through the park.  I was
> told to and turned my headlights off as I got closer to
> the Blazer and saw the Blazer get shot.  After I turned
> the corner, I saw a man standing by the truck.  Like he

1
2
3
4

> was either talking to someone in the truck, or I'm not
> too sure, because, like, I turned, it was dark, and all I
> could see was like a black figure, someone like a shadow.
> I didn't know if he was shot or not, I didn't know
> exactly what happened cause [I] couldn't see, I was just
> driving.  My headlights were still off when the man got
> shot.

5   (Id. at 287.)  Kinsey testified that Petitioner said he shot

6   Rodriguez because he thought the victim might have seen his face or

7   the car's license plate.  (Lodgment No. 2(g), Rep.'s Tr. vol. 9,

8   2630.)  Although these statements all came from coperpetrators, the

9   jury found them credible and agreed with the prosecution that

10  Trevino premeditated the killing.

11       Petitioner has failed to establish a probability that the

12  outcome would have been different if his attorney was given more

13  time to prepare.  Trevino argues that counsel's error had a

14  "substantial and injurious effect on the verdict[,]" citing Brecht

15  v. Abrahamson, 507 U.S. at 627.  (Traverse 8.)  This ineffective

16  assistance claim, however, does not require a separate discussion

17  under Brecht.  "[B]ecause the prejudice analysis in Strickland v.

18  Washington, . . . derived from the Agurs materiality standard,

19  federal courts do not conduct a separate Brecht analysis in

20  ineffective assistance of counsel claims."  Hayes v. Brown, 399

21  F.3d 972, 985 (9th Cir. 2005) (en banc).  Thus, Trevino's first

22  claim for habeas relief should be **DENIED**.

23  B.   **Trial Counsel's Failure to Seek a Severance Based on**

24       **Inconsistent Defenses Was Not Ineffective Assistance of**

25       **Counsel.**

26       In his second claim, Trevino argues that his attorney's

27  failure to seek a severance of Trevino's trial from that of his

28  codefendants' denied him effective assistance of counsel.  (Am.

1  Pet. 8-11; Traverse 16-23.)  He contends Barnes should have
2  requested a severance when it "became apparent that the
3  codefendants' strategy would be to focus on petitioner's guilt as
4  the shooter and to argue that he had fired the gun while they
5  protested the use of any violence."  (Traverse 17.)

6     Petitioner was tried jointly with codefendants Connelly and
7  Gutierrez.  Kinsey, who would have been a codefendant, pled guilty
8  to one count of shooting at an unoccupied vehicle in exchange for
9  cooperating with the prosecution and testifying against the other
10 defendants.  (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 284.)

11    On March 3, 1992, Trevino's prior attorney, Hank Howlett,
12 moved to sever the case based on the possibility that incriminating
13 out-of-court statements made by the codefendants would be admitted.
14 (Lodgment No. 1, Clerk's Tr. vol. 1, 33.)  After Barnes replaced
15 Howlett as counsel on April 10, 1992, he joined in Howlett's motion
16 for severance.  (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1296-97.)
17 Barnes also joined in a motion for separate trials filed by
18 Gutierrez's counsel.  (Id.; see Lodgment No. 1, Clerk's Tr. vol. 1,
19 93, Apr. 27, 1992.)  The trial court denied the motions, instead
20 deciding to redact the codefendants' statements before admitting
21 them at trial.  (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1299;
22 Lodgment No. 2(e), Rep.'s Tr. vol. 7, 2039, May 15, 1992.)  Barnes
23 did not request a severance at any time after this.

24    In a declaration submitted with Trevino's state habeas
25 petition, Barnes explained:

26    At the time of in-limine motions (in preparation for
       which I had done no research), I had no concept or grasp
27     of the conflict between an appropriate defense of my
       client and that of his co-defendants.  I frankly never
28     thought of moving for a severance based upon inconsistent
       theories of defense.

28

(Lodgment No. 5, Pet., Decl. of Barnes 5, <u>In re Trevino</u>, No. D018750.)  Pointing to this statement, Trevino now argues that his counsel's failure to seek a severance based upon inconsistent defenses among the codefendants was not "informed by adequate and competent investigation of the law and facts."  (Traverse 19.) Barnes acknowledges that he did not realize until late in the presentation of evidence that Trevino's defense may be inconsistent with that of his codefendants.  (Lodgment No. 5, Barnes Decl. at 5.)  Looking back, Barnes states he likely would have called his client to the stand to testify that he shot without seeing the victim and to attack Kinsey's credibility.  (<u>Id.</u> at 5-6.)

The California Court of Appeal rejected Petitioner's claim of ineffective assistance under <u>Strickland</u> for failure to seek severance on the ground of inconsistent defenses, finding that Barnes had a "valid tactical basis" for not moving to sever. (Lodgment No. 11, <u>Trevino</u>, No. D017215, slip op. at 18-19.)

### 1.    Reasonableness of Counsel's Performance

"A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient."  <u>Raley v. Ylst</u>, 470 F.3d 792, 799 (9th Cir. 2006) (citing <u>United States v. Mayo</u>, 646 F.2d 369, 375 (9th Cir. 1981)).  Indeed, informed strategic choices are "virtually unchallengeable."  <u>Strickland</u>, 466 U.S. at 690.  "Whether to seek severance of defendants . . . is within the wide range of tactical decisions entrusted to trial counsel."  <u>Johnson v. McGrath</u>, No. CV 03-8844-DDP, 2006 WL 2331006, at *15 n.18 (C.D. Cal. Aug. 2, 2006) (citing <u>Ryan v. Clarke</u>, 281 F. Supp. 2d 1008, 1082 (D. Neb. 2003)). "It does not matter whether trial counsel made the best choice

possible.  The question is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'"  <u>Sullivan v. Schriro</u>, No. CIV-04-1517-PHX-DGC(GEE), 2005 U.S. Dist. LEXIS 26339, at *36 (D. Ariz. Aug. 15, 2005) (quoting <u>Strickland</u>, 466 U.S. at 686).

Trevino asserts that Barnes rendered ineffective assistance because he "never even considered filing a motion to sever based on inconsistent defenses." (Am. Pet. 10.)  But Barnes did join in Trevino's prior counsel's motion to sever based on the prejudicial effect of admitting the codefendants' statements into evidence. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1296-97; Lodgment No. 1, Clerk's Tr. vol. 1, 3-5.)  Counsel argued that if tried jointly, statements by the codefendants implicating Trevino would be admitted.  (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1296-97.)  He asserted that the jury would link redacted statements of the two codefendants and other trial testimony to the detriment of Trevino. (<u>Id.</u>)  Nevertheless, the court denied the motion to sever. (<u>Id.</u> at 1299; Lodgment No. 2(e), Rep.'s Tr. vol. 7, 2039, May 15, 1992.)

The trial court believed that the admission of edited statements protected Trevino's rights under <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).  (<u>Id.</u> at 1290-96.)  According to Trevino, "acceptance of the co-defendants' defense precluded petitioner from being acquitted of first-degree murder." (Traverse 21-22.)  Petitioner argues that "severance of defendants is required when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a

1  reliable judgment about guilt or innocence.'"  (<u>Id.</u> at 20 quoting

2  <u>Zafiro v. United States</u>, 506 U.S. at 539.)

3      This argument is not persuasive.  First, <u>Zafiro</u> involved the

4  interpretation of the Federal Rules of Criminal Procedure, not the

5  United States Constitution.  <u>Phillips v. Million</u>, 374 F.3d 395, 398

6  (6th Cir. 2004); <u>Hood v. Helling</u>, 141 F.3d 892, 898 (8th Cir.

7  1998).  Second, even "[m]utually antagonistic defenses are not

8  prejudicial per se."  <u>Zafiro</u>, 506 U.S. at 538.  Trevino and the

9  codefendants were not asserting truly irreconcilable defenses.

10  Trevino did not dispute that he pulled the trigger.  Instead, he

11  contends, "Petitioner would not have been convicted of first-degree

12  murder and would have had a chance of being convicted of no more

13  than manslaughter based on his shooting at the unoccupied Blazer."

14  (Traverse 18.)  To establish prejudice from a joint trial, "the

15  defenses truly must be mutually exclusive, such that the jury could

16  not believe the core of one defense without discounting entirely

17  the core of the other."  <u>United States v. Dirden</u>, 38 F.3d 1131,

18  1141 (10th Cir. 1994).  Finally, limiting instructions or some

19  other measure will often cure any risk of prejudice.  <u>Zafiro</u>, 506

20  U.S. at 539.

21      The California Court of Appeal observed that "the motion for

22  severance due to conflicting defenses revolves around Barnes's

23  tactical decision to join the codefendants in objecting to the jury

24  being advised of Kinsey's status as an accomplice who had plea

25  bargained with the prosecution."  (Lodgment No. 11, <u>People v.</u>

26  <u>Trevino</u>, D017215, slip op. at 19.)  The state court found a "valid

27  tactical basis" for objecting to accomplice instructions.  (<u>Id.</u>)

28  "Whether a particular decision by counsel was a tactical one is a

1  question of fact, and the state court's resolution of that issue

2  enjoys a strong presumption of correctness."  Holsomback v. White,

3  133 F.3d 1382, 1386-87 (11th Cir. 1998); see Berryman v. Morton,

4  100 F.3d 1089, 1095 (3d Cir. 1996).

5      "The relevant question is not whether counsel's choices were

6  strategic, but whether they were reasonable."  Roe v. Flores-

7  Ortega, 528 U.S. 470, 481 (2000).  "Whether a particular tactical

8  decision was a reasonable one, however, is a question of

9  law . . . ."  Holsomback, 133 F.3d at 1387.

10      In Bonin, the Ninth Circuit explained the Strickland

11  performance standard:  "Because we use an objective standard to

12  evaluate counsel's competence, once an attorney's conduct is shown

13  to be objectively reasonable, it becomes unnecessary to inquire

14  into the source of the attorney's alleged shortcomings."  Bonin v.

15  Calderon, 59 F.3d 815, 838 (9th Cir. 1995) (finding that attorney's

16  alleged drug use was not relevant).  The Eleventh Circuit came to a

17  similar conclusion in Chandler v. United States, 218 F.3d 1305,

18  1315 n.16 (11th Cir. 2000):

19          "There are countless ways to provide effective assistance
            in any given case."  [Citation omitted.]  No lawyer can
20          be expected to have considered all of the ways.  If a
            defense lawyer pursued course A, it is immaterial that
21          some other reasonable courses of defense (that the lawyer
            did not think of at all) existed and that the lawyer's
22          pursuit of course A was not a deliberate choice between
            course A, course B, and so on.  The lawyer's strategy was
23          course A.  And, our inquiry is limited to whether this
            strategy, that is, course A, might have been a reasonable
24          one.

25      In considering a claim of ineffective assistance, "[a] fair

26  assessment of attorney performance requires that every effort be

27  made to eliminate the distorting effects of hindsight . . . ."

28  Strickland, 466 U.S. at 689.  "With the benefit of long and deep

1  reflection," Barnes now believes he would have done things

2  differently.  (See Lodgment No. 5, Barnes Decl. at 6.)  This,

3  however, does not make his performance unreasonable.

4      To establish that his attorney's performance was deficient,

5  Trevino must show that "counsel made errors so serious that [he]

6  was not functioning as the 'counsel' guaranteed the defendant by

7  the Sixth Amendment."  Strickland, 466 U.S. at 687.  Barnes's

8  shortcomings do not fall to this level.  He did not render

9  deficient performance by failing to bring a second motion for a

10 severance based upon defenses which were not truly irreconcilable.

11 See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (holding that

12 "failure to make a futile motion does not constitute ineffective

13 assistance of counsel"); Morrison v. Estelle, 981 F.2d 425, 429

14 (9th Cir. 1992) (finding no ineffective assistance of appellate

15 counsel for failure to make an argument that would not have been

16 successful).

17     After Trevino's motion to sever and Gutierrez's motion for

18 separate trials were both denied, there is no reason to believe

19 that a further motion to sever, based on inconsistent defenses,

20 would have been granted.  Finally, even if the Court were to find

21 that Barnes's performance was deficient due to his failure to

22 investigate the viability of a motion to sever because of

23 inconsistent defenses, the failure to show prejudice precludes

24 relief.

25     **2.   Prejudice**

26     Petitioner cannot establish prejudice because he has not shown

27 he would have been granted a severance, especially in light of the

28 court's ruling on the earlier motions.  Because Trevino and his

codefendants were not asserting truly irreconcilable defenses, this argument for a severance is not persuasive and was unlikely to succeed.  There are no facts to suggest the judge would have ruled differently.  <u>See</u> <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1316 (6th Cir. 1996) (finding no prejudice from decision not to seek a separate trial "since it is clear that any such motion would have been denied[]"); <u>Collier v. United States</u>, 92 F. Supp. 2d 99, 105 (D.P.R. 2000) ("[B]ecause a motion for a severance would have been unsuccessful, Petitioner's claim of ineffective assistance of counsel on that ground must fail.")

Furthermore, Trevino was not prejudiced by Barnes's failure to seek severance on this alternate ground, because if tried separately from his codefendants, the same evidence would have been admitted against Petitioner.  (<u>See</u> Lodgment No. 11, <u>Trevino</u>, No. D017215, slip op. at 20.)  Kinsey would have testified, and Barnes would have been confronted with the same tactical choice of whether to inform the jury that Kinsey was an accomplice who entered a plea agreement with the prosecution.  (<u>Id.</u> at 19-20.)  Trevino cannot show he was prejudiced by his counsel's failure to file a second motion for severance.  Thus, the district court should **DENY** Trevino's second claim.[2]

---

[2] In Petitioner's Traverse, Trevino's counsel further argues that Petitioner was denied the right to a fair trial under the Fifth and Fourteenth Amendments when the court refused to grant a severance.  (Traverse 19-22.) Counsel also alleges that the joint trial violated Trevino's Sixth Amendment right to confront and cross-examine witnesses against him, as set forth in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  (<u>Id.</u> at 21.)

"A Traverse is not the proper pleading to raise additional grounds for relief."  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994). Although <u>Crawford</u> was decided in 2004, neither of these claims were presented to the state court on direct appeal or collateral review, before or while this action has been pending.  (<u>See</u> Lodgment No. 4, Appellant's Opening Brief, <u>Trevino</u>, No. D017215; Lodgment No. 5, Pet., <u>Trevino</u>, No. D018750.)  Thus, they have not been exhausted in state court. 28 U.S.C.A. § 2254(b) (West 2006); <u>see</u> <u>Rose v. Lundy</u>,

**C.   Trial Counsel's Objection to Accomplice Instructions Did Not**
**Deprive Petitioner of His Right to Effective Assistance of**
**Counsel.**

Trevino's third ground for habeas relief is that "he was denied effective assistance when his counsel objected to instructions that could have informed the jury that witness Joseph Kinsey . . . was an accomplice." (Am. Pet. 5-7; Traverse 9-16.) Kinsey was one of the four men in the car during the shooting. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2619; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2788.) He agreed to plead guilty to shooting at an unoccupied vehicle in violation of California Penal Code section 247(b) in exchange for testifying against the other involved parties. (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 284.) Kinsey testified that Trevino shot the victim and that Trevino said he shot the victim because the victim may have seen his face or the license plate of their car. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2630; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816-18.) Petitioner argues that if the accomplice instruction had been given, the jury would have reached a different verdict:

> Had Barnes insisted on the accomplice instructions and insisted on the jury knowing about Kinsey's very favorable plea agreement with the prosecution, the jury would have viewed Kinsey's testimony in an entirely different light and would have had a reasonable doubt as to whether petitioner premeditated before firing the gun.

(Am. Pet. 12.)

---

455 U.S. 509, 522 (1982). Because they are unexhausted and not properly raised in the First Amended Petition, the Court would ordinarily not consider these new claims. Nevertheless, an unexhausted claim may be denied on the merits. 28 U.S.C.A. § 2254(b)(2) (West 2006). The Court, in <u>Whorton v. Bockting</u>, No. 05-595 (U.S. Feb. 28, 2007), recently decided that the rule set forth in <u>Crawford</u> is not retroactive, which precludes relief on Trevino's confrontation claim.

1  The state appellate court determined that Barnes had a

2  "reasonable basis" for his decision regarding Kinsey's accomplice

3  status.  (Lodgment No. 11, <u>Trevino</u>, No. D018750, slip op. at 14.)

4  Kinsey's signed plea agreement specified that he was to testify

5  "fully and truthfully," and Barnes believed "introduction of the

6  plea bargain documents . . . would be detrimental to his client."

7  (<u>Id.</u> at 14.)  These factual findings are presumed correct.

8      **1.   Reasonableness of Counsel's Performance**

9  In California, when an accomplice testifies under a plea

10 agreement, the court has a <u>sua</u> <u>sponte</u> duty to instruct the jury

11 according to CALJIC Nos. 3.10-3.13, 3.18.  <u>See</u> <u>People v. Gordon</u>, 10

12 Cal. 3d 460, 466, 516 P.2d 298, 301, 110 Cal. Rptr. 906, 909

13 (1973).  These instructions state that the accomplice's testimony

14 must be corroborated and that the jury should view it with caution.

15 <u>See</u> CALJIC Nos. 3.10-3.13, 3.18 (West 2005).

16 The reasonableness of counsel's actions depends on the facts

17 of the case, "viewed as of the time of counsel's conduct."

18 <u>Strickland v. Washington</u>, 466 U.S. at 690.  Petitioner contends:

19 "[Barnes] had no time to think about any of it and decided to go

20 along with the others [and object to accomplice instructions]

21 because it seemed like a good thing to do.  His decision was

22 completely uninformed . . . ."  (Traverse 12.)

23 The trial court discussed the accomplice instructions with

24 counsel on May 12 and May 27, and both times Barnes joined in a

25 request with the codefendants' counsel not to instruct the jury on

26 accomplice testimony.  (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 66-

27 70, May 12, 1992; Lodgment No. 2(l), Rep.'s Tr. vol. 14, 3759-60,

28 May 27, 1992.)  During a discussion with the court about voir dire

1  questions to prospective jurors, defense lawyers gave the trial
2  court their reasons for not discussing accomplice testimony and for
3  objecting to accomplice instructions.

4      Codefendant Connelly's attorney stated that although he wanted
5  to cross-examine Kinsey about his "deal with the district
6  attorney's office," he did not want Kinsey's plea agreement
7  admitted into evidence because it "contains a lot of self-serving
8  endorsements of his testimony" which would prove he was telling the
9  truth.  (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 66.)  Codefendant
10 Gutierrez's attorney did not want the plea bargain referred to at
11 all, because if the jury knew what Kinsey pled guilty to, it would
12 speculate on the other defendants' culpability in relation to
13 Kinsey's, since they were all in the car when the shooting
14 occurred.  (Id. at 67.)  Connelly's attorney changed his position
15 and joined in that reasoning; he then withdrew his request to get
16 into the plea bargain.  (Id. at 67-68.)  Barnes agreed and said, "I
17 subscribe to it then, wholeheartedly."  (Id. at 68.)  The pros and
18 cons of referring to Kinsey as an accomplice were fully discussed
19 by the attorneys for the three codefendants.

20     Barnes made it clear that he was making a tactical choice to
21 object to giving accomplice instructions, and in making that
22 objection, he chose not to ask Kinsey about the plea agreement.
23 (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 68-70.)  On May 27, 1992,
24 during a discussion about jury instructions, Barnes noted that
25 accomplice instructions "might have been appropriate if my client
26 were to be tried alone.  In fact, I would have virtually insisted
27 on it."  (Lodgment No. 2(l), Rep.'s Tr. vol. 14, 3759-60.)  This

28

1  reflects Barnes's consistent strategic decision that his client was
2  better served by excluding evidence of Kinsey's plea bargain.

3      An attorney does not render ineffective assistance by failing
4  to request jury instructions or by objecting to proposed
5  instructions that are inconsistent with his trial theory.  <u>Butcher</u>
6  <u>v. Marquez</u>, 758 F.2d 373, 377 (9th Cir. 1985).  Barnes's trial
7  strategy involved admitting that Trevino was the shooter but
8  arguing that the shooting was not premeditated and that Petitioner
9  did not conspire with anyone to commit the shooting.  (<u>See</u> Lodgment
10  No. 2(m), Rep.'s Tr. vol. 15, 3997-4003, May 28, 1992.)  Kinsey
11  refuted this theory by testifying that Trevino stated he shot the
12  victim to avoid being identified.  Barnes decided to attack
13  Kinsey's credibility as a witness rather than as an accomplice, and
14  Barnes did this by pointing out inconsistencies in Kinsey's
15  testimony.  (<u>Id.</u> at 3997-99, 4046-48.)

16      Although Trevino contends his counsel made the wrong decision
17  regarding Kinsey's accomplice status, at the time of the trial,
18  Barnes had a reasonable basis for that decision.  He and other
19  defense counsel believed the introduction of the plea bargain
20  documents, which would result from the designation of Kinsey as an
21  accomplice, would be detrimental to their clients.  Although Barnes
22  indicated that in a separate trial he might have chosen
23  differently, this was not a separate trial.  (Lodgment No. 11,
24  <u>People v. Trevino</u>, D017215, slip op. at 14.)  Counsel's tactical
25  decision did not constitute ineffective assistance.

26      <u>Lankford v. Arave</u>, 468 F.3d 578, recently cited by Trevino,
27  does not change this result.  In <u>Lankford</u>, two brothers were tried
28  for a double murder in separate state court trials.  <u>Id.</u> at 580.

1   Bryan Lankford testified for the prosecution at Mark's trial.
2   "Under cross examination, Bryan admitted at trial that he expected
3   to receive an indeterminate life sentence in return for his
4   testimony."  <u>Id.</u> at 580 n.1.  The attorney for Mark Lankford
5   requested three jury instructions regarding accomplice testimony.
6   One instruction told the jurors that accomplice testimony may be
7   considered even though <u>not corroborated</u> by other evidence; the
8   second informed the jurors that accomplice testimony <u>needed to be</u>
9   <u>corroborated</u>; and the third defined corroboration.  (<u>Id.</u> at 582-
10  83.)

11      Idaho law precludes the use of accomplice testimony to support
12  a conviction unless it is "corroborated by other evidence."  <u>Id.</u> at
13  584.  The federal district and appellate courts both found "no
14  reasonable tactical advantage in requiring an erroneous instruction
15  that would allow the jury to give greater weight to Bryan's
16  testimony."  (<u>Id.</u> (footnote omitted).)  The Ninth Circuit noted:
17  "In this case, '[c]ounsel's errors with jury instructions were not
18  a strategic decision to forego one defense in favor of another.
19  They were the result of a misunderstanding of the law.'"  <u>Id.</u>
20  (quoting <u>United States v. Span</u>, 75 F.3d 1383, 1390 (9th Cir.
21  1996)).

22      This is where <u>Lankford</u> and Trevino part company.  Trevino's
23  attorney did not misunderstand the law.  He made the strategic
24  decision not to inquire about Kinsey's plea bargain to avoid the
25  rehabilitative effect the plea agreement might have.  Barnes
26  decided to impeach Kinsey on other matters.

27      "[S]trategic or tactical decisions on the part of counsel are
28  presumed correct, unless they were completely unreasonable, not

1   merely wrong." <u>Moore v. Marr</u>, 254 F.3d 1235, 1239 (10th Cir.

2   2001).  Petitioner has not shown that Barnes's objection was

3   "completely unreasonable," and accordingly, it does not rise to the

4   level of deficient performance.  This prong of the ineffective

5   assistance claim is lacking.

6       **2.  Prejudice**

7       Nevertheless, even if counsel rendered ineffective assistance

8   by failing to request accomplice instructions, "the controlling

9   issue is whether the attorney's failure to request the instructions

10  prejudiced the defendant." <u>Bonin</u>, 794 F. Supp. at 970.  "In

11  assessing prejudice, the reviewing court should consider such

12  factors as whether the accomplice's testimony was corroborated,

13  whether the trial court gave general credibility instructions, and

14  whether defense counsel questioned the accomplices' credibility

15  during closing argument." <u>Id.</u> (citing <u>United States v. Bosch</u>, 914

16  F.2d 1239, 1248 (9th Cir. 1990)).  In another setting, the court

17  held that the petitioner received ineffective assistance of counsel

18  when his trial attorney did not request an accomplice instruction

19  because the only direct evidence linking petitioner to the crime

20  was the accomplice's testimony.  <u>Freeman v. Class</u>, 95 F.3d 639,

21  641-42 (8th Cir. 1996).

22      Trevino was not prejudiced by his counsel's objection to

23  accomplice instructions.  If they had been given, the jury would

24  have received evidence of Kinsey's plea agreement, which would have

25  offset the admonition to view his testimony with distrust.  (<u>See</u>

26  Lodgment No. 11, <u>Trevino</u>, No. D017215, slip op. at 15.)

27  Additionally, the jury was already aware of Kinsey's involvement

28

1  because he admitted being in the car when the shootings occurred.

2  (Id. at 16.)

3       Besides Kinsey's testimony, there was substantial

4  corroborating evidence that pointed to Trevino's guilt.  (Lodgment

5  No. 11, People v. Trevino, D017215, slip op. at 15-16.)  For

6  example, Carlos Mallard testified that Trevino asked Gutierrez

7  "what was up with the nine" prior to the shooting.  (Lodgment No.

8  2(g), Rep.'s Tr. vol. 9, 2529.)  A nine-millimeter handgun matching

9  the murder weapon and ammunition were found in Petitioner's

10 bedroom.  (Lodgment No. 2(f), Rep.'s Tr. vol. 8, 2316; Lodgment No.

11 2(i), Rep.'s Tr. vol. 11, 3060, 3062, 3065-66; Lodgment No. 11,

12 People v. Trevino, D017215, slip op. at 15.)  Angela Knecht

13 testified that when the four men returned to Connelly's apartment,

14 she heard Trevino say that his hand was shaking when the gun went

15 off.  (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3398.)

16      The corroborating evidence in Trevino's case distinguishes it

17 from Lankford.  There, the court wrote:  "[W]e must ask whether,

18 given proper instructions, there is a 'reasonable probability' that

19 the jury would have found Bryan's testimony [against his brother,

20 Mark] unsupported."  Lankford, 468 F.3d at 588.  The Ninth Circuit

21 found that the corroborating evidence implicated both Lankfords.

22 Id. at 589.  Accordingly, there was a reasonable probability that

23 with proper instructions on corroboration, "the jury would not have

24 convicted Mark of first degree murder."  Id.  The same cannot be

25 said here.  The statements Trevino made to others coupled with the

26 handgun and ammunition found in his bedroom are sufficient

27 corroboration.

28

1    Petitioner adds that instructing the jury with CALJIC No.
2  2.11.5 increased the prejudicial impact of the failure to give
3  accomplice instructions.  (Traverse 15.)  CALJIC No. 2.11.5
4  instructs the jury not to discuss or consider why a person that may
5  have been involved in the crime is not a defendant in the trial.
6  (Lodgment No. 1(a), Clerk's Tr. vol. 2, 251.)  The trial court gave
7  CALJIC No. 2.11.5 over the objections of all three defense
8  attorneys.  (Lodgment No. 2(l), Rep.'s Tr. vol. 14, 3776, May 27,
9  1992.)

10    The court of appeal found that the trial court properly gave
11  the instruction because it "was entirely consistent with Barnes's
12  tactical decision to join with the other codefendants' objection to
13  the giving of accomplice instructions and precluding any evidence
14  of Kinsey's plea bargain to be presented to the jury."  (Lodgment
15  No. 11, Trevino, No. D017215, slip op. at 17–18.)  CALJIC No.
16  2.11.5 is generally not given when the unjoined perpetrator
17  testifies at trial.  (Id. at 17.)  It is excluded because a
18  perpetrator who is testifying usually will be asked about his
19  status, making the instruction unnecessary.  (Id.)  In this case,
20  however, the defense strategy was not to inform the jury of
21  Kinsey's plea bargain; the instruction was consistent with that
22  strategy.  (Id.)

23    Petitioner claims that by giving CALJIC 2.11.5, the trial
24  court stripped the jury of the ability to assess Kinsey's
25  credibility, "apart from his demeanor on the stand and his prior
26  inconsistent statements."  (Traverse 15.)  The jury, however, was
27  also instructed with CALJIC 2.20, concerning the general
28  credibility of witnesses.  (Lodgment No. 1(a), Clerk's Tr. vol. 2,

253.)  This instruction informed the jury of several bases that it could use to discredit Kinsey's testimony.  This instruction states that in determining witness credibility, the jury may consider, among other things, the existence of an interest or motive to lie and any inconsistent statements made by the witness.  (<u>Id.</u>)  Barnes used his closing statement to highlight inconsistencies in Kinsey's testimony, argue that Kinsey was a "pleaser" whose testimony could not be trusted, and that Kinsey had a "constituency" and had "to please somebody."  (Lodgment No. 2(m), Rep.'s Tr. vol. 15, 4048.)  There is little to suggest that the jury would have made a different assessment of Kinsey's credibility if the jury was not instructed on CALJIC 2.11.5 and instead allowed to inquire into Kinsey's status as an unjoined perpetrator.

In light of all the evidence presented at trial, Petitioner has failed to show a reasonable probability that giving an accomplice instruction would have brought about a different verdict.  Accordingly, the district court should **DENY** Petitioner's third claim for relief.

### V. CONCLUSION

For the reasons stated above, the district court should **DENY** Trevino's First Amended Petition for Writ of Habeas Corpus.

This Report and Recommendation will be submitted to United States District Court Judge Irma E. Gonzalez, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before <u>March 26, 2007</u>.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the

43

1   objections shall be served and filed on or before <u>April 6, 2007</u>.

2   The parties are advised that failure to file objections within the

3   specified time may waive the right to appeal the district court's

4   order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

5

6   Dated:  March 6, 2007

7                                              Ruben B. Brooks
                                               United States Magistrate Judge

8   cc:  Judge Gonzalez
         All parties of record

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28