# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WILLIAM TREVINO,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>MICHAEL EVANS,[1]<br><br>　　　　　　　Respondent. | CASE NO. 94CV1913 IEG (RBB)<br><br>**ORDER (1) REJECTING OBJECTIONS, (2) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (4) DENYING MOTION FOR APPOINTMENT OF COUNSEL, and (5) GRANTING CERTIFICATE OF APPEALABILITY**<br><br>[Doc. Nos. 11, 53, & 56] |

　　　　Petitioner Anthony William Trevino ("Trevino"), a state prisoner proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his June 1992 conviction for first degree murder, conspiracy to shoot at an unoccupied vehicle, and shooting at an unoccupied vehicle. On March 6, 2007, Magistrate Judge Ruben B. Brooks filed a Report and Recommendation ("R&R") recommending the Court deny the petition. On March 26, 2007, Petitioner filed objections to the R&R. On July 20, 2007, petitioner filed a renewed motion for appointment of counsel, which Magistrate Judge Brooks previously denied.

　　　　Having reviewed all of the relevant pleadings in this case de novo, the Court finds

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court substitutes Michael Evans, Warden of Salinas Valley State Prison, for K.W. Prunty, former Warden.

1  Magistrate Judge Brooks's R&R to be thorough, complete, and an accurate analysis of the legal
2  issues presented in the petition. The Court hereby rejects petitioner's objections to the R&R,
3  adopts the R&R in full, and denies the petition. The Court likewise denies the renewed motion for
4  appointment of counsel.

**BACKGROUND**

6  **A.    Factual Background**[2]

7  Petitioner was prosecuted for his role in two shootings in the Greenfield Mobile Home
8  Park ("Greenfield") on December 2, 1991. Petitioner and co-defendant Joseph Kinsey were
9  passengers in a car driven by co-defendant Robert Connelly. A Chevrolet Blazer driven by James
10 Whitney cut off Connelly's car. Connelly followed the Blazer to Greenfield, located it, and exited
11 the park. Connelly, Kinsey, and petitioner then met co-defendant Carlos Gutierrez, Jr. at the San
12 Diego Factory Outlet. Petitioner asked Gutierrez, "what was up with the nine?" and left the
13 Factory Outlet with a gun.

14 The four co-defendants re-entered Greenfield in Gutierrez's car and located the Blazer.
15 Then, they exited Greenfield and got into Connelly's car, with petitioner occupying the front
16 passenger seat. Connelly drove back into Greenfield and by the Blazer. Petitioner filed several
17 shots at the Blazer. As Connelly turned the street corner, petitioner fired a second series of shots,
18 one of which hit and killed Alfredo Rodriguez. Kinsey testified that petitioner later stated he shot
19 at Rodriguez because petitioner thought Rodriguez might have seen his face or Connelly's license
20 plate.

21 On December 16, investigators found a loaded 9 millimeter handgun in petitioner's
22 bedroom. The casings from the crime scene matched this weapon.
23 //

24 **B.    Procedural Background**

---

[2] For reasons discussed <u>infra</u> and in the R&R (pp. 10-12), the pre-AEDPA version of § 2254 applies to the petition. Under the applicable version of § 2254(d), the state court's written findings of fact are entitled to a presumption of correctness. Although petitioner challenges the state court's analysis of his legal claims as an unreasonable determination of the facts, petitioner does not challenge the California Court of Appeal's written findings on the factual background of the case. (Lodgment No. 11, at 2-5.) Therefore, the Court takes its summary of the facts here from the factual background section of the California Court of Appeal's written opinion.

In an information filed February 21, 1992, petitioner was charged with murder, conspiracy to shoot at an unoccupied vehicle, and shooting at an unoccupied vehicle. The information further alleged that petitioner used a firearm and intentionally inflicted great bodily injury by discharging a firearm from a motor vehicle. Attorney Hank Howlett initially represented petitioner and filed motions for discovery, severance, and suppression of evidence. (Lodgment No. 1, at 33.) On April 7, petitioner's family retained attorney Brent Barnes, who was substituted as counsel on April 10. (Lodgment No. 1(a), at 343-45.) When Mr. Barnes was substituted as counsel, the Hon. Frederic L. Link ("assignment judge") set the matter for trial on April 27. (Lodgment No. 3, at 7.)

On April 27, the assignment judge denied Mr. Barnes's motion for a continuance and assigned the trial to the Hon. Richard M. Murphy ("trial judge"). (Lodgment No. 3(b), at 2-3.) That same day, the trial judge estimated the trial would be trailed for two weeks because of a previously scheduled trial.[3] (Lodgment No. 2(a), at 273.) The previously scheduled trial ended with a plea agreement on April 29, and the trial judge trailed petitioner's case to May 1. (Id. at 292.) On May 1, the trial judge again trailed the case to May 5 but refused to hear Mr. Barnes's motion for a continuance because the assignment judge previously denied that motion. (Id. at 301, 305.) On May 4, the assignment judge trailed the case to May 11 and directed Mr. Barnes to file no further continuance motions. (Lodgment No. 3, at 9.) On May 11, relying on the assignment judge's order that no further continuances would be granted, the trial judge denied Mr. Barnes's motion for an additional continuance. (Lodgment No. 2(c), at 1255.)

Mr. Barnes joined in the motion to sever on the basis of co-defendants' inculpatory statements, which Mr. Howlett previously filed. (Id. at 1296.) The trial judge denied all motions to sever. (Id. at 1299.)

Prior to trial, Kinsey pled guilty to one count of shooting at an unoccupied vehicle. (Lodgment No. 11, at 14.) At trial, Mr. Barnes joined co-defendants' objections to jury instructions on accomplice testimony. (See Lodgment No. 3(c), at 69-70 (during voir dire proceedings on May 12), & No. 2(l), at 3759-60 (during trial on May 27).) Therefore, the trial

---

[3] Relying on the anticipated length of the previously scheduled trial, the trial judge set dates of May 4 for the filing of motion papers and May 7 for the filing of replies. (Lodgment No. 2(a), at 274.)

1  judge did not instruct the jury to view Kinsey's testimony "with care and caution," see CALJIC
2  3.18, or to require corroborating evidence before convicting petitioner on the basis of that
3  testimony, see CALJIC 3.11.  The trial judge did, however, instruct the jury not to consider why a
4  person who may have been involved in the crime was not a defendant at trial.  See CALJIC 2.11.5.
5  The trial judge further instructed the jury concerning the general credibility of witnesses.  See
6  CALJIC 2.20 (enumerating nonexclusive list of factors that "ha[ve] a tendency reasonably to
7  prove or disprove the truthfulness of the testimony of a witness").

8        The jury convicted petitioner on all three counts and found the special allegations were
9  true.  (Lodgment No. 1, at 170-74.)  Petitioner received an aggregate sentence of thirty years to
10 life.  (Lodgment No. 1(a), at 353.)  Petitioner moved for a new trial or modification of verdict, id.
11 at 309, and submitted a supplemental memorandum in support of this motion, id. at 337-41.  This
12 motion was denied.  (Id. at 423.)

13       Petitioner appealed his conviction on July 28, 1992, alleging that he was deprived of his
14 right to effective counsel by the trial court's denials of requests for a continuance, counsel's
15 objection to accomplice jury instructions, and counsel's failure to move for severance on the basis
16 of inconsistent defenses.  (Id. at 455, & Lodgment No. 4, Table of Contents.)  Petitioner also filed
17 a petition for writ of habeas of corpus in the California Court of Appeal.  (Lodgment No. 5.)  The
18 California Court of Appeal jointly considered the appeal and petition, affirming the conviction and
19 denying the petition.  (Lodgment No. 11.)  The Court of Appeal likewise denied petitioner's
20 petition for rehearing.  (Lodgment No. 13.)

21       Petitioner then filed a petition for review and petition for writ of habeas corpus in the
22 California Supreme Court.  (Lodgment Nos. 14 & 15.)  The court summarily denied both petitions
23 on February 23, 1994.  (Lodgment Nos. 16 & 17.)

24       On December 21, 1994, petitioner filed a petition for writ of habeas corpus in this Court.
25 (Doc. No. 1.)  On June 29, 1995, petitioner moved to withdraw the single unexhausted claim
26 included in that petition.  (Doc. No. 4.)  Magistrate Judge Roger C. McKee nonetheless issued a
27 report and recommendation on July 10, 1995, recommending dismissal of the entire petition for
28 the failure to exhaust.  (Doc. No. 5.)  This Court adopted the report and recommendation on

1  September 8, 1995 and dismissed the petition. (Doc. No. 6.)

2  On April 18, 1996, petitioner moved again to withdraw the unexhausted claim and
3 requested reconsideration of his petition. (Doc. No. 8.) In an Order issued May 15, 1996, the
4 Court recognized the prior dismissal of the petition and stated that it would disregard documents
5 filed subsequent to that dismissal. (Doc. No. 9.)

6  Petitioner filed a first amended petition nunc pro tunc to January 29, 2004. (Doc. No. 11.)
7 The amended petition raised the three claims petitioner exhausted in state court (i.e., denial of
8 continuance, failure to move for severance based on inconsistent defenses, and objection to
9 accomplice jury instructions). This Court construed the first amended petition as a motion for
10 relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). (Doc. No. 12.) The Court
11 denied Rule 60(b) relief on May 21, 2004. (Doc. No. 21.)

12  On November 15, 2005, the Ninth Circuit reversed, holding that the Court should have
13 granted petitioner's motion to amend his original petition. Trevino v. Prunty, 150 Fed. Appx. 741,
14 742 (9th Cir. 2005). The panel cited this Court's failure to acknowledge petitioner's first motion
15 to withdraw his unexhausted claim, the "misleading" directive not to file further pleadings after
16 the petition was dismissed, the incompetence of petitioner's first attorney (who let the statute of
17 limitations run), and the procrastination of petitioner's second attorney (who failed to act for an
18 additional two years). Id. All these factors amounted to "extraordinary circumstances" warranting
19 Rule 60(b) relief. Id. The panel directed this Court to consider the amended petition on the
20 merits. Id.

21  Respondent answered the first amended petition on August 16, 2006. (Doc. No. 49.)
22 Petitioner filed a traverse on October 10, 2006. (Doc. No. 51.) On March 6, 2007, Magistrate
23 Judge Ruben B. Brooks issued a forty-four page R&R recommending this Court deny the petition
24 with respect to all three of petitioner's claims. (Doc. No. 53.) Petitioner filed objections on March
25 26, 2007. (Doc. No. 54.) Respondent did not file a reply to the objections.

26  **LEGAL STANDARD**

27  The magistrate judge set forth the appropriate standard of review with regard to Trevino's
28 petition. (R&R, at 10-12.) Specifically, the magistrate judge applied the version of § 2254 in

effect prior to the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The provisions of AEDPA do not apply because petitioner's case was pending when AEDPA became effective on April 24, 1996.[4] Lindh v. Murphy, 521 U.S. 320, 336-37 (1997); Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001). Under the pre-AEDPA standard, federal habeas corpus relief is appropriate for a petitioner whose state custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where, as here, the California Supreme Court summarily denied Trevino's petition for review, the Court analyzes the California Court of Appeal's twenty-page opinion as the "last reasoned decision" on the merits of petitioner's case. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). Because petitioner has objected to the R&Rs's recommendations as to all three of petitioner's claims, the Court reviews the R&R de novo. 28 U.S.C. § 636(b)(1)(C); Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002).

**DISCUSSION**

**A.    Failure to Make Additional Severance Motion**

    1.    Magistrate Judge's Findings

Petitioner claims he was denied effective assistance of counsel because Mr. Barnes did not move to sever petitioner's trial from that of his co-defendants on the basis of inconsistent defenses. (First Am. Pet., at 8-11.) The magistrate judge identified the two-prong standard for evaluating a claim for ineffective assistance of counsel. First, counsel's performance must "f[a]ll below an objective standard of reasonableness," and, second, the deficient performance must prejudice the defendant to a degree that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); accord Busch v. Woodford, — F.3d —, 2007 WL 2429363, at *4 (9th Cir. Aug. 29, 2007). The magistrate judge recognized petitioner carries the burden of overcoming the presumption that counsel was competent. United States v. Cronic, 466 U.S. 648, 658 (1984); Dows v. Wood, 211 F.3d 480, 485 (9th Cir. 2000); Newsome v. Ryan, No. 05CV1534IEG(RBB),

---

[4] Petitioner's case was "pending" prior to AEDPA's effective date because petitioner filed his original petition on December 21, 1994, and the Ninth Circuit held this Court should have granted petitioner's motion to amend the original petition.

2007 WL 433282, at *32 (S.D. Cal. Jan. 24, 2007).

The magistrate judge found that Mr. Barnes's performance satisfied an objective standard of reasonableness because he joined in Mr. Howlett's previous motion to sever, which was based on co-defendants' statements that inculpated petitioner. (Lodgment No. 1, at 37.) The trial court denied this motion and a similar motion filed by co-defendant Gutierrez, instead redacting the statements. The magistrate judge reasoned there was "no reason to believe" the trial judge would have granted a motion to sever based on inconsistent defenses. (R&R, at 33.) On the merits, the magistrate judge found petitioner's defense was not "truly irreconcilable" with the co-defendants' defenses because petitioner conceded he fired the bullet that killed Rodriguez. (See id., at 33 (citing cases).) The other co-defendants merely attempted to minimize their culpability by depicting Trevino's shooting of Rodriguez as a premeditated killing, rather than manslaughter. "Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel." James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994); accord Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (where petitioner alleges counsel did not litigate a claim competently, petitioner must show the claim is meritorious).

The magistrate judge further found that the failure to move for a severance based on inconsistent defenses did not result in prejudice to petitioner. Reiterating that the trial judge denied the other severance motions and the defenses were not "truly irreconcilable," the magistrate judge found the trial court likely would have denied any such motion. Furthermore, even if petitioner's trial was severed, the jury would have heard the same evidence against petitioner.

2. Petitioner's Objections

Petitioner objects that Mr. Barnes's joinder in the prior motions to sever was insufficient because he failed to file a separate motion explaining how a joint trial would particularly prejudice petitioner. Rather than making strategic choices of how to represent petitioner, Mr. Barnes allegedly failed to investigate the case adequately and instead followed the lead of co-defendants' counsel. Examples of inadequate investigation include the failure to meet with petitioner until May 9, and the lack of research on motions in limine or jury instructions. Petitioner further objects the failure to seek a severance on the basis of inconsistent defenses was, in fact, prejudicial

1 because the co-defendants' incriminating statements would have been inadmissible at the severed
2 trial.  Petitioner also disputes the correct legal standard for establishing ineffective assistance of
3 counsel based on a failure to file a pretrial motion.  See Kimmelman, 477 U.S. at 375 (where
4 defendant alleged that counsel was ineffective because of failure to file a timely motion to
5 suppress, Supreme Court required defendant to prove the suppression claim was "meritorious" and
6 the existence of a "reasonable probability that the verdict would have been different" if the motion
7 had been granted).

        3.      Analysis

9         Petitioner's objections emphasize the declaration Mr. Barnes submitted with petitioner's
10 state petition, in which Mr. Barnes claimed that he did not recognize the inconsistent defenses
11 until much of the evidence had been presented at trial.  The record contradicts this assertion.  On
12 April 10, when Mr. Barnes first appeared before the assignment judge and before he was
13 substituted into the case, he described the case as follows: "Four young men are probably going to
14 be at each other's throats during the trial and [counsel] would like to know the extent of it[.]"[5]
15 (Lodgment No. 3, at 6.)  This exchange indicates that, even before Mr. Barnes represented
16 petitioner, he was aware of the likelihood of some conflict in the various defenses each co-
17 defendant would offer at trial.  Although Mr. Barnes wishes in retrospect that he had moved to
18 sever based on inconsistent defenses (Lodgment No. 5, Barnes Decla., at 5), the reviewing court is
19 required "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of
20 counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the
21 time.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689); accord
22 Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (court cannot apply "fabled twenty-
23 twenty vision of hindsight" (internal quotation omitted)).  At the time of pretrial motions, the trial
24 judge denied a motion to sever based on inculpatory statements and instead consulted extensively
25 with counsel in redacting the statements.  (See, e.g., Lodgment No. 2(e).)  Based on the trial
26 judge's extensive effort to redact the statements rather than grant the severance, Mr. Barnes's
27 failure to file an additional severance motion was a reasonable tactical decision.  The motion to

---

[5] In context, Mr. Barnes was trying to obtain the contents of Kinsey's plea agreement.

sever was "futile" in the sense that petitioner cannot establish a "reasonable probability" the trial court, having denied the other motions to sever, would have granted this hypothetical motion. See James, 24 F.3d at 27.

More importantly, petitioner does not carry his burden of showing that he was prejudiced by counsel's failure to file the motion to sever. I.e., even according to the legal standard petitioner relies upon, petitioner has not shown "a reasonable probability that the verdict would have been different" if the trial judge granted the hypothetical severance motion. Kimmelman, 477 U.S. at 375. Petitioner makes conclusory allegations that the statements of his co-defendants would have been inadmissible at a separate trial. (Objections, at 12.) Petitioner claims a confrontation clause violation under Crawford v. Washington, 541 U.S. 36 (2004) (Traverse, at 21; Objections, at 12), but, as the magistrate judge pointed out, the Supreme Court has held that Crawford is not retroactive. Whorton v. Bockting, — U.S. —, 127 S.Ct. 1173, 1177 (2007). Therefore, petitioner's argument is unsupported by any citation to valid legal authority. Even if petitioner received a separate trial, the jury would have heard the same evidence relied on to convict petitioner in the joint trial. Petitioner cannot establish a "reasonable probability" the outcome of the separate trial would have been different. For these reasons, the Court finds Mr. Barnes did not render ineffective assistance by failing to move to sever on the basis of inconsistent defenses.

**B.     Objection to Accomplice Jury Instructions**

   1.     Magistrate Judge's Findings

Petitioner claims he was denied effective assistance of counsel because Mr. Barnes joined in codefendants' objections to giving the jury accomplice instructions. (First Am. Pet., at 11-12.) Petitioner argues the jury would have reached a different verdict on premeditation if the jury had received the accomplice instructions and known the terms of Kinsey's favorable plea agreement. Specifically, the jury would have discounted Kinsey's testimony that petitioner shot Rodriguez because Rodriguez may have seen petitioner's face or the vehicle's license plate.

Again applying the legal standard for ineffective assistance of counsel claims, the magistrate judge found Mr. Barnes's performance was objectively reasonable. If the jury had received the accomplice instruction, the state could have introduced Kinsey's plea agreement into

1  evidence. That agreement stated Kinsey's obligation "at all times [to] tell the truth and nothing
2  other than the truth, while testifying on the witness stand." (Lodgment No. 11, at 14.)  Objecting
3  to the jury instructions gave petitioner a tactical advantage: it kept from the jury the language in
4  the plea agreement that would enhance Kinsey's credibility as a witness.  Mr. Barnes instead
5  attacked Kinsey's credibility by discussing inconsistencies in Kinsey's testimony during closing
6  argument.  "A disagreement with counsel's tactical decisions does not provide the basis for
7  declaring that the representation was constitutionally deficient." Raley v. Ylst, 470 F.3d 792, 799
8  (9th Cir. 2006).  The magistrate judge rejected Mr. Barnes's claim that he made a "completely
9  uninformed" decision to join in co-defendants' objections to accomplice instructions because the
10 trial court discussed the instructions with counsel on separate occasions more than two weeks
11 apart and heard extensive argument on why counsel did not want the accomplice instructions.

12     The magistrate judge distinguished the tactical decision here from the facts of a case cited
13 by petitioner, in which the Ninth Circuit held that counsel was constitutionally ineffective because
14 counsel's requested jury instructions on accomplice testimony "were the result of a
15 misunderstanding of the law." Lankford v. Arave, 468 F.3d 578, 584 (9th Cir. 2006) (internal
16 quotation omitted).  The jury instructions in Lankford gave the defendant "no reasonable tactical
17 advantage" because they enabled the jury to give the accomplice's testimony more weight than
18 permitted by state law. Id.

19     In determining whether the failure to request accomplice instructions prejudiced petitioner,
20 the magistrate judge considered the appropriate legal factors, including corroborative evidence,
21 general jury instructions on witness credibility, and defense counsel's attack on the accomplice's
22 credibility during closing argument. United States v. Bosch, 914 F.2d 1239, 1247-48 (9th Cir.
23 1990); Bonin v. Vasquez, 794 F. Supp. 957, 970 (C.D. Cal. 1992).  The magistrate judge discussed
24 the wealth of corroborative evidence to bolster Kinsey's testimony.  (See R&R, at 41 (discussing
25 how petitioner asked Gutierrez before the shooting, "what was up with the nine"; the match
26 between the crime scene casings and the nine-millimeter handgun in petitioner's bedroom; and
27 testimony that petitioner's hand was shaking when he shot Rodriguez).)  The magistrate judge
28 further rejected the argument that the trial court exacerbated the prejudice by giving CALJIC

1  2.11.5, which prohibits a jury from speculating why a person who may have been involved in the
2  crime is not a defendant at trial.  Instead, the magistrate judge endorsed the California Court of
3  Appeal's reasoning that CALJIC 2.11.5 is normally superfluous when an unjoined perpetrator
4  testifies at trial because counsel will ask the perpetrator about his status.  Here, by contrast, the
5  instruction was appropriate because counsel deliberately kept evidence of Kinsey's plea bargain
6  from the jury, and the jury thus remained unaware of Kinsey's status.  Also, the magistrate judge
7  rejected petitioner's claim that CALJIC 2.11.5 compromised the jury's ability to assess Kinsey's
8  credibility because the jury also received CALJIC 2.20, the general instruction on witness
9  credibility.  Finally, Mr. Barnes attacked Kinsey's credibility in closing argument.  Having
10 considered all three factors, the magistrate judge concluded the failure to give accomplice
11 instructions did not prejudice petitioner.

        2.       Petitioner's Objections

13 Petitioner claims that Mr. Barnes's joinder in objections to accomplice jury instructions
14 was not a reasonable tactical decision, but instead the consequence of Mr. Barnes's failure to do
15 any research on jury instructions.  Petitioner claims the magistrate judge erroneously cited a Tenth
16 Circuit case for the proposition that counsel's tactical decisions are "presumed correct, unless they
17 were completely unreasonable[.]" (See R&R, at 39-40 (quoting Moore v. Marr, 254 F.3d 1235,
18 1239 (10th Cir. 2001).)  The Tenth Circuit applies this highly deferential standard only in cases
19 where counsel's strategic decision was "adequately informed," Bullock v. Carver, 297 F.3d 1036,
20 1047 (10th Cir. 2002), and petitioner argues such a standard does not apply to counsel's
21 uninformed decision to oppose the accomplice instructions.  Petitioner further argues the
22 opposition to accomplice instructions was prejudicial because no other evidence corroborated
23 Kinsey's testimony that the shooting was premeditated.  If jurors had been instructed about the
24 requirement of corroborating evidence for accomplice testimony, they allegedly would have
25 convicted petitioner of something less than first-degree murder.  Similarly, petitioner claims the
26 jurors would have assigned less weight to Kinsey's testimony if they had known he was an
27 accomplice who pled guilty to a lesser offense to avoid liability for first-degree murder.
28 //

### 3. Analysis

The Court rejects petitioner's objections and adopts the R&R with respect to this claim for habeas relief. Mr. Barnes's actions fall within the range of effective assistance of counsel even without applying the Tenth Circuit's "completely unreasonable" standard. Under Strickland, in considering any claim for ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689. Furthermore, as the magistrate judge noted, counsel's assistance is not ineffective merely because the Court disagrees with counsel's trial tactics. Raley, 470 F.3d at 799. Mr. Barnes's conduct represents a reasonable tactical decision. By joining in co-counsel's objections to accomplice instructions, Mr. Barnes prevented the jury from learning of Kinsey's promise in his plea agreement to tell the truth on the witness stand. Those statements in the plea agreement would have enhanced Kinsey's credibility as a witness. While the plea agreement was not entered into evidence, Mr. Barnes attacked Kinsey's credibility in closing argument. Of course, Mr. Barnes could have chosen differently, by insisting on giving the accomplice instructions to the jury and challenging Kinsey's credibility as an accomplice who capitulated to the police to avoid risking a conviction for first-degree murder. However, this Court does not second-guess counsel's tactical choice concerning the best method for challenging Kinsey's credibility.

Furthermore, the Court rejects petitioner's argument that Mr. Barnes's objection to the accomplice instructions was uninformed. Although the issue of accomplice instructions was first raised before the trial began, the trial judge raised the issue again on May 27, toward the end of the trial. The trial judge specifically asked Mr. Barnes if he still objected to accomplice instructions. While Mr. Barnes claimed he "would have virtually insisted" on the accomplice instructions in a hypothetical, separate trial, he adhered to his position that he was "objecting for tactical reasons to the accomplice instructions." (Lodgment No. 2(l), at 3759-60.)

Finally, the Court finds the failure to give the accomplice instructions did not prejudice petitioner on the issue of premeditation. A closer reading of the instructions at issue indicates the limited nature of the requirement of corroborative evidence to support an accomplice's testimony.

1  Specifically, CALJIC 3.12 requires other evidence which "tends to connect the defendant with the
2  commission of the crime charged." On the other hand, "it is not necessary that the evidence of
3  corroboration be sufficient in itself to establish every element of the crime charged, or that it
4  corroborate every fact to which the accomplice testifies." Id. The accomplice's testimony is
5  uncorroborated "[i]f there is no independent evidence which tends to connect defendant with the
6  commission of the crime." Id. The corroborative evidence cited in the R&R is sufficient to
7  "tend[] to connect [petitioner] with the commission of the crime." Furthermore, that corroborative
8  evidence need not "establish every element of the crime charged," including premeditation. Mr.
9  Barnes did not render ineffective assistance of counsel by objecting to accomplice instructions.

**C.    Denials of Motions for Continuance**

Petitioner claims he was denied effective assistance of counsel because Mr. Barnes did not have adequate time to prepare for trial. (First Am. Pet., at 4-8.) The magistrate judge construed petitioner's claim as a two-pronged challenge: (1) the state court's denials of Mr. Barnes's various motions for a continuance were such an abuse of discretion as to violate due process, and (2) without those continuances, counsel rendered ineffective assistance at trial. See Castillo v. Matesanz, 348 F.3d 1, 9-11 (1st Cir. 2003) (separately addressing habeas petitioner's due process challenge to denial of a continuance and claim for ineffective assistance of counsel); United States v. Stewart, 256 F.3d 231, 244 (4th Cir. 2001) (where defendant alleged district court violated his Sixth Amendment right to effective assistance of counsel by denying motion for continuance, defendant must first show denial of continuance was an abuse of discretion and then show specific prejudice from denial).

    1.    Due Process

        *a.    Magistrate Judge's Findings*

The magistrate judge acknowledged the trial judge's "broad discretion" in whether to grant continuances and recognized "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)); accord United States v. Garrett, 179 F.3d 1143, 1145 (9th Cir. 1999). Relevant factors in evaluating the

1 denial of a continuance include the granting of previous continuances; the inconvenience to
2 parties, counsel, or the court; reasons for the delay; prejudice to the defendant if the continuance is
3 denied; and the defendant's fault for the delay. Williams v. Stewart, 441 F.3d 1030, 1056 (9th Cir.
4 2006). Because the due process inquiry into the denial of a continuance focuses on "the reasons
5 presented to the trial judge at the time the request is denied," Ungar, 376 U.S. at 589, the
6 magistrate judge refused to consider the evidence Mr. Barnes would have presented at trial (as
7 summarized in petitioner's post-trial motion and state habeas petition), if the state court had
8 granted a continuance. (R&R, at 16.)

9 The magistrate judge serially considered each of Mr. Barnes's requests for a continuance.
10 With respect to Mr. Barnes's request for a 30-day continuance when he first appeared before the
11 assignment judge on April 10, the magistrate judge noted Mr. Barnes's representations to the court
12 that he had analyzed the case for approximately three weeks and was familiar with the issues. The
13 assignment judge allowed Mr. Barnes to substitute into the case on the condition that he would be
14 ready to begin trial on April 27. However, because trial did not actually begin until May 11, Mr.
15 Barnes received the equivalent of the thirty-day continuance he requested.

16 By motion filed April 22 and argued April 27, Mr. Barnes requested a continuance because
17 defense experts and investigators needed more time and discovery materials were still incoming.
18 The magistrate judge observed that, although the motion was denied, the assignment judge
19 assigned the case to a trial department in which trial would not begin for about a week and a half.
20 Thus, Mr. Barnes had more time to complete the necessary tasks.

21 On May 4, the assignment judge granted Mr. Barnes's motion for a one-week continuance
22 to trail the case to May 11. The assignment judge granted this motion even though the trial judge
23 would have been available to begin trial on May 5. When Mr. Barnes again moved for a
24 continuance on the eve of trial, the trial judge denied that motion.

25 Based on his analysis of the record, the magistrate judge found the state court
26 "accommodated [petitioner's] request for additional time, balanced the conflicting demands on the
27 prosecution and codefendants, and considered the stated reasons for continuances." (R&R, at 19.)
28 The magistrate judge concluded the state court sufficiently weighed all relevant factors so that the

denials of a continuance were not abuses of discretion.

     b.  *Petitioner's Objections*

   Petitioner objects to the magistrate judge's refusal to consider the evidence Mr. Barnes presented in his motion for new trial and state habeas petition.  In <u>Ungar</u>, the Supreme Court said of analyzing whether the denial of a continuance violates due process: "The answer must be found in the circumstances present in every case, <u>particularly</u> in the reasons presented to the trial judge at the time the request is denied."  376 U.S. at 589 (emphasis added).  Therefore, the reasons Mr. Barnes presented to the trial judge are the primary factors for consideration, but they are not exclusive.  <u>Cf</u>. <u>Skillern v. Estelle</u>, 720 F.2d 839, 850-51 (5th Cir. 1983) (considering reasons offered to state trial judge in motion for new trial and holding that continuance did not violate due process).  Petitioner argues the magistrate judge's limited review of evidence was "counterintuitive" because, if denial of the continuance prevents counsel from presenting certain evidence to the jury, post-trial motions and declarations are necessary to show what evidence was not presented.  (Objections, at 3.)

   Petitioner further objects that the California Court of Appeal and magistrate judge did not mention certain aspects of the factual record.  These aspects include the time Mr. Barnes had to devote to restoring the expert funding that the assignment judge improperly revoked, the single private consultation between Mr. Barnes and petitioner that took place on May 9, and the limited amount of time Mr. Barnes spent in reviewing the case before being substituted as counsel. Additionally, petitioner emphasizes that previous counsel did less work on the case than he represented to Mr. Barnes and that Mr. Barnes did not obtain information about Kinsey's plea agreement until shortly before trial.  Finally, petitioner directs the Court's attention to Barnes's multiple representations to the Court that he was not adequately prepared to try the case, along with the assignment judge's statement to Mr. Barnes on April 27, "I don't care if you're ready or not."

   Petitioner claims the relevant factors all pointed in favor of granting the continuance. Petitioner argues that other counsel did not oppose Mr. Barnes's motions for a continuance, Mr. Barnes was not "dilatory or obstructionist," petitioner did not contribute to the situation giving rise

1  to the continuance motion, and the trial began about five months after petitioner was arrested.
2  Petitioner claims the state court granted continuances only to accommodate other counsel's trial
3  schedules, without considering Mr. Barnes's need for additional preparation time.

4      *c.*  *Analysis*

5    The Court agrees with petitioner that <u>Ungar</u> does not preclude consideration of evidence
6  Mr. Barnes submitted with the motion for new trial and state habeas petition. Even considering
7  that evidence, however, the Court finds the state court did not abuse its discretion in denying Mr.
8  Barnes's various motions for a continuance. The state court properly exercised its discretion as it
9  attempted to balance the schedules of counsel for the state and multiple co-defendants. This was
10 not an easy task: counsel had other trials ongoing, as well as various hearings in courts outside of
11 San Diego County. Furthermore, the record contradicts petitioner's assertion that the state
12 acquiesced from the beginning in Mr. Barnes's requests for a continuance. When Mr. Barnes
13 substituted into the case on April 10, counsel for the state opposed any continuance past April 27.
14 (Lodgment No. 3, at 3.) Finally, the Court emphasizes the assignment judge allowed Mr. Barnes
15 into the case on the condition that Mr. Barnes would be ready to try the case by April 27. (<u>Id.</u>, at
16 6-7.) Mr. Barnes accepted this condition. (<u>Id.</u> at 7.)

17   Several nominal "denials" were <u>de facto</u> grants of additional time for Mr. Barnes to prepare
18 for trial. Mr. Barnes ended up receiving the additional thirty days he requested when he first
19 substituted into the case on April 10. Additionally, the assignment judge denied the request on
20 April 27 but assigned the case to a trial department so that Mr. Barnes had additional time to
21 prepare. The assignment judge's granting the May 4 continuance is highly probative evidence that
22 the state court did not have "an unreasoning and arbitrary 'insistence upon expeditiousness in the
23 face of a justifiable request for delay[.]'" <u>See</u> <u>Morris</u>, 461 U.S. at 11-12 (quoting <u>Ungar</u>, 376 U.S.
24 at 589). The assignment judge gave Mr. Barnes the additional week the trial judge had originally
25 promised, rather than compel Mr. Barnes to begin trial the next day when the trial judge
26 unexpectedly became available. In light of these prior continuances and <u>de facto</u> extensions of
27 time, the state court's final denial of a continuance on the eve of trial was not an abuse of
28 discretion.

1        2.      Ineffective Assistance of Counsel

2            *a.*      *Magistrate Judge's Findings*

3      Again applying the standard for ineffective assistance of counsel claims, the magistrate

4 judge found Mr. Barnes's performance was objectively reasonable. See Chambers v. Maroney,

5 399 U.S. 42, 59 (1970) (Harlan, J., concurring and dissenting) ("Where counsel has no

6 acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the

7 defendant is effectively denied his constitutional right to assistance of counsel.") The magistrate

8 judge considered the time Mr. Barnes spent on the case before substituting in as counsel, his

9 agreement with the assignment judge's demand that he would be ready for trial on April 27, the

10 additional two weeks he actually had after that date, and his representation that he worked

11 exclusively on the case after substituting in. (R&R, at 23.)

12      In analyzing the issue of prejudice, the magistrate judge declined to apply a presumption of

13 prejudice because of Mr. Barnes's limited preparation time. See, e.g., United States v. Cronic, 466

14 U.S. 648, 665 (twenty-five days held insufficiently short to "even arguably justif[y] a presumption

15 of ineffective assistance of counsel"). To determine prejudice, the magistrate judge "compare[d]

16 the evidence that actually was presented to the jury with that which could have been presented had

17 counsel acted appropriately." Daniels v. Woodford, 428 F.3d 1181, 1201 (9th Cir. 2005).

18 Although Mr. Barnes claimed he needed more time to gather demonstrative evidence that

19 Greenfield was too dark on the night of the shooting for petitioner to have seen the victim, the

20 magistrate judge found that Mr. Barnes adequately communicated his theory to the jury through

21 the testimony of a private investigator, cross-examination of Kinsey, and statements in closing

22 argument. (R&R, at 25.)

23      The magistrate judge considered the particular difficulty of establishing prejudice "[i]n

24 cases with overwhelming evidence of guilt[.]'" Bonin v. Calderon, 59 F.3d 815, 836 (9th Cir.

25 1995) (quoting United States v. Coleman, 707 F.2d 374, 378 (9th Cir. 1983)). Applied to these

26 facts, the magistrate judge found overwhelming evidence of guilt because all the co-perpetrators

27 said they saw the victim prior to the shooting. These eyewitness statements were sufficient for the

28 jury to find premeditation (and petitioner conceded that he was the shooter). The magistrate judge

concluded petitioner could not show "a reasonable probability . . . the result of the proceeding would have been different," where a "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### b. *Petitioner's Objections*

Petitioner objects to the magistrate judge's purportedly inadequate discussion of his counsel's ineffective performance. The magistrate judge failed to mention Mr. Barnes's specific representations to the Court that he did not have enough time to do legal research, meet with petitioner, and, above all, develop a coherent theory of defense. Petitioner specifically contests the magistrate judge's limited analysis of why Mr. Barnes needed additional time to investigate the case. More than merely obtaining more evidence of the lighting at the crime scene, petitioner claims Mr. Barnes needed additional time to understand the case. With more time, Mr. Barnes would have realized, inter alia, the necessity of moving for a severance and requesting accomplice jury instructions. See Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999) (defining deficient performance as the failure to adequately investigate and introduce evidence that demonstrates factual innocence).

Turning to the prejudice prong, petitioner claims the magistrate judge applied the incorrect legal standard. Comparing the evidence presented to the jury with the evidence that effective counsel would have presented is "far too narrow," petitioner claims, because Mr. Barnes had "an essential misunderstanding of the case," in addition to inadequate time to present evidence. (Objections, at 9.) Petitioner further claims the magistrate judge inappropriately required petitioner to show that more time would have enabled Mr. Barnes to obtain a different verdict for his client. "[A] reasonable probability does not mean that [the reviewing court] must determine that the jury more likely than not would have returned a verdict for something beside first degree murder, but only that [petitioner] has shown 'a probability sufficient to undermine confidence in the outcome.'" Jennings v. Woodford, 290 F.3d 1006, 1016 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 694).

Petitioner claims the magistrate judge's finding of "overwhelming evidence of guilt" misses the point. (Objections, at 9 (citing R&R, at 26).) Instead, the relevant issue is the evidence

of premeditation because petitioner claims, if Mr. Barnes had more preparation time, there would have been a "reasonable probability" that the jury would have convicted petitioner of some lesser offense than first-degree murder.

    *c.*  *Analysis*

Petitioner alleges three specific ways in which the inadequate time for preparation rendered Mr. Barnes's assistance ineffective. (Petition § A ¶ 24.) As discussed supra, the first two allegations—the failure to move for a severance and the objections to accomplice jury instructions—fail as a matter of law. The third allegation is that, with more time, Mr. Barnes could have presented demonstrative evidence that, on the night of the shooting, Greenfield was too dark for petitioner to have seen Rodriguez. According to petitioner's motion for new trial, the evenings during April and May (i.e., the time when Mr. Barnes was preparing for trial) were too cloudy to obtain a measure of the light levels in the clear skies on the evening of the shooting. (Lodgment No. 1(a), at 350.) The Court rejects the argument that counsel's assistance was ineffective because weather conditions during the trial preparation period did not mimic the night of the offense. Instead, the Court agrees with the analysis in the R&R: Mr. Barnes found adequate alternative ways to argue to the jury that petitioner could not see Rodriguez prior to shooting him. Counsel did not fall below an objectively reasonable standard of performance by failing to present demonstrative evidence of the light levels at Greenfield on the night of the shooting. Furthermore, in light of the ample evidence counsel did introduce at trial, the absence of demonstrative evidence did not prejudice petitioner.

Counsel had thirty days after substituting into the case to prepare for trial. In these circumstances, Cronic precludes the Court from applying a presumption of prejudice. 466 U.S. at 665. In the absence of presumed prejudice, the petitioner must show "'how specific errors of counsel undermined the reliability of the finding of guilt.'" Young v. Runnels, 435 F.3d 1038, 1043 (9th Cir. 2006) (quoting Cronic, 466 U.S. at 659 n.26) (emphasis added). Other than the three allegations presented and rejected supra, petitioner points to no other "specific errors." Instead, petitioner relies on an amorphous theory that, because counsel was not prepared for trial, petitioner was convicted of first-degree murder rather than some lesser offense. This general

1 argument does not satisfy the legal standard for establishing ineffective assistance of counsel.

**D.     Certificate of Appealability**

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A) (2007).[6] The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable[.]'" Beaty v. Stewart, 303 F.3d 975, 984 (9th Cir. 2002) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Based on the pleadings, the Court finds petitioner has made a "substantial showing" and grants a certificate of appealability with respect to all three of petitioner's claims. See id. at 983-84 (holding that "petitioner must make a substantial showing . . . as to each issue he wishes to appeal").

**CONCLUSION**

For the reasons stated herein, the Court **REJECTS** petitioner's objections and **ADOPTS** the magistrate judge's thorough and well-reasoned report and recommendation. The Court **DENIES** the petition for writ of habeas corpus. Having denied the petition, the Court also **DENIES** the renewed motion for appointment of counsel. The Court sua sponte **GRANTS** a certificate of appealability as to all claims raised in the petition.

**IT IS SO ORDERED.**

**DATED: September 18, 2007**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**
**Southern District of California**

---

[6] Prior to AEDPA's effective date, a state prisoner could appeal a final order in a habeas proceeding to the court of appeals only with "a certificate of probable cause." 28 U.S.C. § 2253 (1996). Nonetheless, "post-AEDPA law governs the right to appeal" where the appeal is initiated post-AEDPA. Slack v. McDaniel, 529 U.S. 473, 481 (2000); accord Mayfield v. Woodford, 270 F.3d 915, 921 (9th Cir. 2001).